Argued December 13, 1933; affirmed January 16, 1934

# BLY *v.* MOORES MOTOR CO.

(28 P. (2d) 627)

*Lamar Tooze,* of Portland (Cake & Cake and Jaureguy & Tooze, all of Portland, on the brief) for appellant.

*Paul R. Harris,* of Portland (Davis & Harris, of Portland, on the brief) for respondent.

BAILEY, J.   On October 19, 1931, the plaintiff was driving his Chrysler car in an easterly direction on Morrison street in the city of Portland, Oregon, and as he approached the intersection of Fourth and Morrison streets the traffic officer at that intersection changed the flow of traffic from an easterly and westerly direction on Morrison street to northerly and southerly on Fourth street, causing plaintiff to bring his automobile to a stop near the pedestrian crossing on the west side of Fourth street.  Not long after coming to a stop, plaintiff's automobile was run into, from the rear, by the service car of the defendant corporation, with resulting injuries of which plaintiff complains.

On this appeal three assignments of error are presented by the defendant, the first of which is based upon an instruction given by the court, and the other two upon the refusal of the court to give instructions requested by the defendant.  We shall discuss these assignments in the order set forth in appellant's brief.

In instructing the jury the court, among other things, made the following statement: "The rules of the road in Oregon in force at the time when this occurred, among other things provide   *   *   *" and then, after referring to and quoting certain rules of the road, the

court continued: "A driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicles and the traffic upon, and condition of, the highway." The court then proceeded to cover by instructions many of the questions involved in the litigation, and at the close of these instructions asked counsel whether or not there were any further instructions requested, whereupon the following colloquy occured:

"[Mr. Harris] Did your honor instruct the jury that any violation of the rules of the road was negligence in and of itself?

"[The Court] No—*per se?* No.

"[Mr. Harris] I thought perhaps the defendant would want that instruction given.

"[Mr. Jaureguy] We make the request.

"[Mr. Harris] I have no objection to having that instruction given, your honor."

Thereupon the court instructed the jury that there was another form of negligence, which "is called negligence *per se,*" such as violating the speed limit or not making a stop before entering a through street. The instruction then continued:

"I read you here the rules of the road. Now, this negligence *per se* rule applies in this case, if you find there was in this case any violation of those rules of the road that are laid down here in the legislative act."

Among the objections which counsel for defendant noted to the court's instructions was an exception "to the instructions of the court with reference to the rules of the road in which the court read to the jury the rules of the road with regard to one motor vehicle following another motor vehicle at a distance set forth in the rules of the road, on the ground that that is not within the issues in this case."

Defendant further stated that an exception was taken to "that portion of the instruction in which the court instructed the jury that it would be negligence *per se* if it found any violation of the rules of the road as enacted by the legislature, on the ground that that instruction covers matters which are not in issue in this case." After this exception was taken, counsel for the plaintiff requested permission to amend the complaint so as to make one of the charges of negligence the violation by defendant of that particular rule of the road last above mentioned. Counsel for plaintiff further stated that he had no objection to withdrawing that part of the instruction to which exception was taken. The court, however, denied plaintiff's request to amend and refused to withdraw that part of the instruction excepted to by the defendant.

The specific acts of carelessness and negligence charged by the plaintiff to the defendant are as follows:

"(a) That said defendant at said time and place carelessly and negligently failed and neglected to have its automobile under proper control;

"(b) That said defendant at said time and place carelessly and negligently failed to keep a proper lookout for traffic using said intersection;

"(c) That said defendant at said time and place carelessly and negligently operated its said motor vehicle at a high, dangerous and reckless rate of speed, considering the conditions existing at the time and place of the accident;

"(d) That said defendant at said time and place carelessly and negligently failed and neglected to have its said motor vehicle provided with two sets of brakes operating independently sufficient to control the vehicle at all times."

In its answer the defendant charged that the plaintiff was guilty of contributory negligence, in that the

plaintiff knew or with the exercise of reasonable care should have known that the operation of the defendant's automobile would be affected by the stopping of plaintiff's car; that the plaintiff negligently, carelessly and recklessly brought his automobile to a sudden stop and negligently, carelessly and recklessly omitted to give any signal visible to the driver of defendant's automobile, of plaintiff's intention to stop; and that the plaintiff, immediately prior to said collision, failed and omitted to keep and maintain a proper or any lookout for the purpose of ascertaining the proximity of the defendant's automobile.

From plaintiff's testimony it is apparent that his theory of the case, as presented to the jury, was that his car had come to a complete stop some 20 or 30 seconds before the collision, while the defendant asserts that the plaintiff's car was only a few feet ahead of the defendant's service vehicle as they approached the intersection, and that, due to the plaintiff's failure to signal his intention to stop, the accident occurred.

The court instructed the jury that "in the absence of notice to the contrary, all motor vehicle drivers have a right to assume that other motor vehicle drivers will observe the requirements of the law, and you are entitled to bear this in mind in your consideration of the acts and conduct of plaintiff and Mr. Simms [the driver of defendant's service car] at and before the time of the accident in this case."

In view of the defendant's theory that plaintiff was precluded from a recovery because of his contributory negligence, the court properly instructed the jury that both the plaintiff and the defendant had the right to assume that the other would observe the law relative to the operation of automobiles on the streets and highways of the state. In order to determine whether or

not plaintiff was guilty of contributory negligence it was helpful to the jury to know that the rules of the road prohibit the driver of an automobile from following another vehicle "more closely than is reasonable and prudent" under the circumstances. Knowledge of the rules of the road would materially assist the jury in determining whether or not plaintiff was guilty of contributory negligence, in view of the court's instruction that the driver of a car had the right to assume, in the absence of notice to the contrary, that the drivers of other vehicles would observe that requirement of the law. This proposition is virtually conceded by the defendant. As a matter of fact, the defendant requested an instruction similar to the one last above quoted, relative to what Mr. Simms had a right to assume with reference to the action of Mr. Bly, and this requested instruction was broadened by the court to cover the conduct of both parties to the litigation.

Defendant's real objection seems to be, not so much to the court's instruction relative to the duty of a driver not to follow another vehicle "more closely than is reasonable and prudent," but to what the court, some 11 pages further on in its instructions, told the jury, after the discussion between court and counsel, hereinbefore referred to, concerning a violation of the rules of the road as constituting negligence *per se.*

The defendant requested the court to instruct the jury that a violation of the rules of the road was negligence *per se,* without limiting its request to any specific rule or rules of the road and apparently without seeing its connection with the instruction which had already been given concerning the rules of the road in reference to the duty of a driver of a motor vehicle when following another automobile. Although counsel for defendant later excepted to the instruction thus given by the court, "on the ground that that instruc-

tion covers matters which are not in issue in this case,'' no request was made by defendant to exclude from its application the violation of the rules of the road deemed to be not in issue in the case. Each litigant had charged the other with certain violations of the rules of the road, and as to those violations the instruction given was proper.

Counsel for the defendant had, as already pointed out, requested the court to instruct the jury that a violation of the rules of the road constituted negligence *per se*. By limiting his objection to the court's instruction on that subject, he did not directly or otherwise withdraw this request, nor did he express any acquiescence in the suggestion offered by counsel for plaintiff that the instruction be withdrawn. Moreover, in denying plaintiff's request to amend his complaint so as to include the violation of the rule of the road here in question as one of the acts of negligence charged to defendant, the court stated that the instruction excepted to by defendant involved ''the basic rule of care'' and ''you [referring to the plaintiff] have pleaded care and negligence''. What the court said in denying plaintiff's motion to amend was, as undoubtedly understood by counsel for defendant, that the complaint was already sufficiently broad to include the charge, for in defendant's brief we find this statement: ''The court considered that the instruction was appropriate because the plaintiff in his complaint had pleaded 'care and negligence'.'' Nevertheless, counsel for defendant did not except to this ruling of the court, nor did he point out specifically what was the objection to the instruction, but stood on the ground stated in the exception, that it ''covers matters which are not in issue in this case''.

Defendant's contention in the first assignment of error can not be sustained, inasmuch as the parts of

the instruction complained of were pertinent and material to some of the issues involved and it was the duty of counsel for defendant, if he considered their application too broad, to point out to the trial court his specific, rather than general, objections. Moreover, we have read the entire record and do not believe that the jury was misled and decided the case on an issue not made by the pleadings; nor do we believe that the defendant has in any way been prejudiced by the giving of the instructions hereinbefore quoted.

■ The next assignment of error urged is that the court refused to give the following instruction requested by the defendant:

"If you should find under the evidence and in accordance with the instructions I have given you in this case that the plaintiff is entitled to recover damages from the defendant, about which, of course, the court expresses no opinion, then it will become your duty to determine the amount of the damages. Under the law the amount of the damages is based solely upon the idea of fair and reasonable compensation to the injured party for the loss sustained. I also instruct you that when a person is injured, it becomes the duty of that person to exercise due diligence and care in selecting medical attention and to exercise due care to see that the injury is taken care of to the end that the loss sustained by the injured party may be minimized as much as possible. The law does not encourage an injured person neglecting to follow up an injury and apply proper cures and proper attention to it for the mere purpose of exaggerating his injury or increasing the possible claim against another party on account of such loss. It requires an injured person as soon as he is injured to remedy the condition so as to keep down the cost and expense or the damage that might be claimed from the injury. Therefore, in this case it was the duty of Mr. Bly to take proper care of himself to reduce and minimize the result of the injury and if you find with respect to the hernia which plaintiff

claims resulted proximately from this accident that it could have been corrected and reduced by a surgical operation without any considerable risk to him, then I instruct you that it was the duty of Mr. Bly to undergo such an operation and he would not be entitled to recover any damages by reason of any loss sustained by him on account of his failure to have such an operation performed.''

The trial court committed no error in refusing to give the foregoing requested instruction. An essential element in determining whether or not plaintiff's conduct, after receiving the injury, was proper, is the reasonableness of what he did or failed to do, measured by what a man of ordinary care and prudence would have done under like circumstances. No greater obligation could be imposed on the plaintiff to remedy his condition or to submit to an operation than could be expected of a man of ordinary prudence who found himself in a similar situation.

The authorities submitted by the defendant on this proposition recognize this principle of law. For instance, 8 R. C. L., 448, cited and quoted by defendant, succinctly states the rule as follows:

''It is the duty of a person injured through the negligence of another to use ordinary and reasonable diligence in securing medical or surgical aid, after receiving such an injury; that is, he must employ such medical or surgical aid as ordinary prudence would require under the circumstances. Though he is not unqualifiedly bound to engage medical aid and attendance for such length of time as his injuries make necessary, and though the fact that he did not immediately send for a physician will not necessarily defeat his recovery, if a man of ordinary prudence would have engaged such aid and attendance more promptly than the injured party did, his delay in this regard may be taken into consideration, and compensation may be denied for damages which might have been so averted.''

Another authority relied upon by the defendant is the case of *Grant v. State Industrial Accident Commission,* 102 Or. 26 (201 P. 438), which involved the construction of a provision of our workmen's compensation act requiring an injured workman to submit, when ordered by the accident commission, to a surgical operation. In passing upon the question before it in that case the court observed, in part, as follows:

"The doctrine debarring the workman from compensation in cases where his refusal operates as a bar proceeds on the theory that continuance of his disability is due to his own unreasonable conduct and not to the employment. This is only a recognition of the legal principle that an individual whose person or property is injured must do whatever is reasonably proper to lessen the loss. Such being the theory of the doctrine we would expect to find, as we do, that the test for determining the rights of the workman is whether his conduct is that of a reasonable man. When the issue arises, with the workman contending that his refusal is reasonable and the commission asserting that it is not reasonable, it is an issue of fact, and is to be decided like the issue of negligence in an action at law.    *    *    *

"We have not discovered any jurisdiction where the commission or other body administering the statute is given arbitrary power to prescribe an operation under inevitable penalty of loss of compensation in case of refusal by the workman; nor does any statute to which our attention has been called make the right of refusal depend upon the balance of medical opinion. The opinions of medical men, whether divided or unanimous, are not alone and of themselves necessarily controlling. In every jurisdiction the right of the workman is dependent upon his conduct, and his conduct is measured by the course which would be pursued by an ordinarily reasonable man.    *    *    *

"Our conclusion is that our statute should be construed to mean that the workman's right to compensation is to be suspended if he refuses to submit to an

operation to which an ordinarily reasonable man would submit if similarly situated. \* \* \*

"If, in a given case, it can be said that the workman is refusing to undergo a safe and simple operation, which if performed by a competent surgeon is fairly certain to result in removal of the disability and is not attended by serious risk or extraordinary pain, and one to which an ordinarily prudent and courageous person would submit for his benefit and comfort, no question of compensation being involved, then it can be said that the continued disability of the workman is the direct result of his own unreasonable refusal: Lesh v. Illinois Steel Co., 163 Wis. 124, 131 (157 N. W. 539, L. R. A. 1916 E, 105). In the instant case the operation is a major one and there is a risk of producing a result which some persons might deem worse than Grant's present condition. Even though it be assumed that all the material facts are admitted, nevertheless it is obvious that reasonable men may differ as to whether Grant acted reasonably in refusing to submit to the proposed operation. Each case will depend largely upon its own facts and circumstances; but it appears to us that the facts and circumstances related in the record here were such as to make the question for decision one of fact for the jury and not one of law for the court."

Let us consider briefly the wording of the requested instruction. By its language it would have advised the jury that the law "requires an injured person as soon as he is injured to remedy the condition so as to keep down the cost and expense or the damage that might be claimed from the injury". This part of the instruction might be understood by the members of a jury to mean that the plaintiff was required to undergo an operation immediately. All that the law required of plaintiff was that he should use ordinary and reasonable diligence in obtaining medical aid. There is nothing in the record to indicate that he did not do so. A few minutes after the accident he consulted his physi-

cian, who advised plaintiff, due to his tubercular condition, to use a properly fitted truss for a time, until his general condition would warrant a surgical operation.

The foregoing quoted part of the requested instruction and the part following it omitted any mention of the rule that plaintiff's duty in the premises was to be measured by what an ordinarily prudent man would have done under the circumstances. Even if the jury might have found from the conflicting evidence of the expert medical witnesses that the hernia "could have been corrected or reduced by a surgical operation without any considerable risk to him", such a finding would not have been sufficient to prevent plaintiff from recovering "any damages by reason of any loss sustained by him on account of his failure to have such an operation performed", for the reason that his failure to submit to an operation might, in view of all the facts, have been reasonable; and furthermore, an ordinarily prudent man might have adopted the course which plaintiff followed.

██ The last assignment of error advanced is the refusal of the court to give the following instruction requested by the defendant:

"If you should find from the evidence that the sole, proximate cause of the collision between the service car of the defendant and the automobile of the plaintiff was the accidental breaking of the left rear axle of the defendant's service car, if you find it did break, and that there was no negligence on the part of the defendant or its driver, in connection with this matter, then I instruct you that the law would treat the accident as a pure accident and the plaintiff would not be entitled to recover from the defendant in this case."

The court, however, did give another instruction, substantially as requested by defendant, on the same subject, as follows:

"I instruct you that if you find from the evidence that the accident in this case was a pure accident and was not proximately caused by any negligence on the part of either Mr. Bly or Mr. Simms, then there would be no liability on the part of the defendant to plaintiff and your verdict should be for the defendant."

The instruction given by the court covered sufficiently the matters contained in the requested instruction which was not given. The trial court must be given some latitude in the trial of jury cases, and unless the court's rulings are clearly erroneous, and the rights of a litigant are prejudicially affected thereby, they should not be disturbed on appeal. In this instance the defendant submitted two different instructions on the same subject. The trial judge selected the one which he undoubtedly thought presented the issue fully and clearly. Had both requested instructions been given, they would have tended to focus unduly the attention of the jury on the issue covered by them. Moreover, the instruction given by the court, and requested by defendant, advised the jury that if it found that the accident was "not proximately caused by any negligence on the part of" either of the drivers of the motor vehicles involved in the accident, the mishap was purely an accident and the verdict should be for the defendant. The requested instruction which was not given, however, omitted in its definition of what constituted a "pure accident" reference to the absence of negligence on the part of the plaintiff.

No error was committed by the trial court in refusing to give the instruction covered by the third assignment of error.

The judgment appealed from is affirmed.

RAND, C. J., and BEAN and CAMPBELL, JJ., concur.