Argued July 9, affirmed September 10, 1973

# ZIMMERMAN, *Respondent, v.* AUSLAND, *Appellant.*

513 P2d 1167

*Patrick Ford,* Medford, argued the cause for appellant. With him on the briefs were Ford & Cowling, Medford.

*Fred Allen,* Coos Bay, argued the cause and filed the brief for respondent.

TONGUE, J.

This is an action for damages for personal injuries sustained in an automobile accident. Defendant admitted liability. The issue of damages was submitted to a jury, which returned a verdict of $7,500 in favor of plaintiff. Defendant appeals. We affirm.

Defendant contends that the trial court erred in submitting to the jury the issue whether plaintiff sustained a permanent injury, as alleged in her complaint, and in instructing the jury on plaintiff's life expectancy, after taking judicial notice of the Standard Mortality Tables.[1]

In support of that contention defendant says that those instructions and the submission of those issues to the jury constituted error because there was no evidence from which the jury could properly find that plaintiff's injuries were permanent; that in this case the evidence established that plaintiff's condition, involving an injury to her knee, "is curable by routine surgery"; that all injured persons have a duty to mitigate damages by submitting to surgery "where the risk is small and a favorable result reasonably probable"; and that this "precludes any instruction on permanency."

---

[1] Defendant also assigns as error the giving of instructions on "future pain and suffering" and "future interference with normal and usual activities," but no proper exception was taken to such instructions.

*Summary of the evidence.*

Plaintiff testified that her right knee was injured in the automobile accident. She said that as of the time of trial she still suffered swelling and pain in the knee after walking, as in shopping, and that as a substitute teacher she was no longer able to participate in physical education activities involving "physical games" or to play volleyball and tennis, as in the past.

Her doctor testified that plaintiff suffered from a torn semi-lunar cartilage in her knee; that "the probable future of this knee" was "one of gradual deterioration"; that her injury was "permanent"; and that it was "very probable" that she would "require a surgical procedure" to remove the torn cartilage. He also testified that after such an operation "the recover [sic] is fairly good" and that "the outlook for good recovery would be very optimistic."

In addition, plaintiff's doctor testified on cross-examination by defendant's attorney that he had not prescribed any "treatment" for plaintiff; that surgery is "not always" required in cases like this; and that "* * * [t]here are two indications for immediate surgery. One, if the knee is locked. The other is if it is catching and allowing a person to fall. Otherwise, it's pretty much a matter of how much it is bothering a patient."

Defendant's doctor, although disagreeing with the diagnosis that plaintiff suffered from a torn semi-lunar cartilage, testified that if she did have such an injury, as is "a very frequent injury seen in athletes," the torn cartilage should be "surgically excised," i.e., "removed in total," and that after such an operation "the patient should recover completely" and be able "to return to all normal and usual activities."

He also testified that "If the meniscal injury is of a fairly major significance and there's a major type tear, the patient will have acute symptoms from which he will never recover without surgery of the meniscus," but that if the symptoms are not "clear cut and they still seem to have symptoms," a "diagnosis by an arthrogram should be done" prior to such surgery.[2]

*There was sufficient evidence of permanent injury, in the absence of evidence sufficient to establish as a matter of law that plaintiff unreasonably failed or refused to submit to surgery.*

■ This court has previously recognized the almost universal rule that the admissibility of evidence of mortality tables in a personal injury case is dependent upon evidence that the injury is permanent. See *Skultety v. Humphreys,* 247 Or 450, 458, 431 P2d 278 (1967), and cases and authorities cited therein. See also Annot., 50 ALR2d 419, 421-22 (1956).[3] As held in *Skultety* (at 458) the same is true of the submission to a jury of allegations of permanent injury and of instructions to the jury on that subject.

---

[2] Defendant's doctor also expressed the opinion that plaintiff's difficulty was due to "chrondomalacia," which is "an erosive process under the surface of the kneecap" and one which he would "anticipate" to be "permanent." For the purposes of this opinion, however, it is not necessary to consider that evidence of possible permanent injury.

[3] We held in Frangos v. Edmunds, 179 Or 577, 604, 173 P2d 596 (1946), that "Where there is substantial evidence of permanent injury, the standard mortality tables may become admissible at least if earning power is permanently impaired." In this case defendant did not, by any proper objection, exception or assignment of error, raise the question whether plaintiff's earning power was impaired by her injury and whether, for that additional reason, mortality tables could not properly be considered in this case. See also *Creel v. Shadley,* 266 Or 494, 513 P2d 755 (1973), decided this day.

■ It is equally well established that the plaintiff in a personal injury case cannot claim damages for what would otherwise be a permanent injury if the permanency of the injury could have been avoided by submitting to treatment by a physician, including possible surgery, when a reasonable person would do so under the same circumstances. McCormick on Damages 136, § 36 (1948). See also Annot., 48 ALR2d 346 (1956).

■■ In considering whether plaintiff is required to mitigate her damages by submitting to surgery we must bear in mind that while plaintiff has the burden of proof that her injury is a permanent injury, defendant has the burden of proving that plaintiff unreasonably failed to mitigate her damages by submission to surgery. McCormick, *supra*, 130, § 33. Cf. *Kulm v. Coast-to-Coast Stores*, 248 Or 436, 440, 432 P2d 1006 (1967). However, evidence that plaintiff could reasonably have avoided all or part of the damages is admissible under a general denial. *Blair v. United Finance Co.*, 235 Or 89, 91, 383 P2d 72 (1963). See also McCormick, *supra*, 130, § 33.

■ Ordinarily, of course, the questions whether an injury is permanent and whether a reasonable person under the same circumstances would submit to surgery are questions of fact for the jury, assuming that substantial evidence is offered. Also, in the ordinary case, both issues would be submitted to the jury under appropriate instructions.

In this case defendant did not request an instruction on mitigation of damages, with the result that this question was not submitted to the jury. Nevertheless, if the facts are such that the court must hold, as a matter of law, that the plaintiff failed to mitigate

her damages by submission to surgery when a reasonable person would have done so, the plaintiff would not be entitled to claim damages for what might otherwise be a permanent injury. It would also follow, in such an event, that defendant would be correct in contending that it was error to submit the issue of permanent injury to the jury, including consideration of the mortality tables.

■ This result would not follow, however, unless the evidence in this case is clear and conclusive to the effect that a reasonable person under the same circumstances would have submitted to surgery. Otherwise, plaintiff would be entitled to have the jury decide both the question whether plaintiff's injury is a permanent injury and also the question whether, under the circumstances, a reasonable person would have submitted to surgery. If, in such an event, the jury found that plaintiff did not unreasonably fail or refuse to submit to surgery and if there was evidence that plaintiff's injury would otherwise be permanent, the jury could then properly award damages for permanent injury and its verdict in this case must be affirmed.

In general, as previously stated, the test to be applied in determining whether a plaintiff has unreasonably failed or refused to mitigate his damages by submitting to a surgical operation is whether, under the circumstances of the particular case, an ordinarily prudent person would do so, i.e., the duty to exercise reasonable care under the circumstances. *Bly v. Moores Motor Co.*, 145 Or 528, 536, 539, 28 P2d 627 (1934). See also Annot., 48 ALR2d 346, 350 (1956), and McCormick, *supra*, 133, § 35. Conversely, if under the circumstances, a reasonable person might well de-

cline to undergo a surgical operation, a failure to do so imposes no disability against recovering full damages. McCormick, *supra,* 133-134, § 35.

■ The factors to be considered for this purpose ordinarily include the risk involved (i.e., the hazardous nature of the operation), the probability of success, and the expenditure of money or effort required. See Annot., 48 ALR2d 366-372 (1956). Some courts also consider the pain involved as a factor, but no such question is presented for decision in this case. See 48 ALR2d, *supra,* 369.

Defendant has cited *Wells v. Clark & Wilson Lbr. Co.,* 114 Or 297, 326, 235 P 283 (1925), in which this court stated that an injured person is not "legally bound to submit to a major operation in order to minimize an injury," but went on to say that "[t]he contrary is the case where the risk is small and favorable results reasonably probable." The court did not hold, however, that the amount of risk involved in a surgical operation is the only factor which may be considered in deciding whether a reasonable person under the same circumstances would submit to such an operation.

Subsequently, in *Bly v. Moores Motor Co., supra,* this court said that:

"* * * Even if the jury might have found from the conflicting evidence of the expert medical witnesses that the hernia 'could have been corrected or reduced by a surgical operation without any considerable risk by him', such a finding would not have been sufficient to prevent plaintiff from recovering 'any damages by reason of any loss sustained by him on account of his failure to have such an operation performed', for the reason that his failure to submit to an operation might, in view of all the facts, have been reasonable; and further-

more, an ordinarily prudent man might have adopted the course which plaintiff followed." (145 Or at 539)

Indeed, in *Wells* it was recognized by McBRIDE, C. J., that:

"* * * Plaintiff, and many other people, would prefer, in cases where their insides were involved, to give themselves the benefit of the doubt and 'Rather endure the ills they have than fly to others they know not of.'" (114 Or at 325)

But even if, as held in *Bly,* absence of "any considerable risk" is not of itself controlling, it is at least one of the proper factors to be considered. Indeed, it has been held that there must be evidence relating to the extent of the risk involved in a particular type of surgical operation before a jury may properly consider the contention that a plaintiff acted unreasonably in declining to submit to a surgical operation. See *Colton v. Benes,* 176 Neb 483, 126 NW2d 652, 662 (1964). See also *Thompson v. Quarles,* 297 SW2d 321, 327 (Tex Civ App 1957). The same must be true, *a fortiori,* when, as in this case, defendant contends that a court should hold as a matter of law that plaintiff unreasonably failed or refused to submit to a surgical operation. No such evidence was offered in this case.

Neither is there any evidence that plaintiff had been advised by any doctor that she should submit to a surgical operation on her knee and that she then failed or refused to do so. Indeed, both plaintiff's and defendant's doctors agreed that surgery was not indicated at the time of their examination. In *Missouri, K & T Ry Co of Texas v. Dellmon,* 171 SW 799, 800 (Tex Civ App 1914), it was held that:

"* * * The burden was on defendant to show

that plaintiff did not consult a throat specialist as he had been advised to, and in the absence of proof that he did not, an issue as to whether he was negligent or not in not doing so did not arise."

To the same effect, see *Franco v. Fujimoto,* 390 P2d 740, 752-53 (Hawaii 1964), and *Kelty v. Best Cabs, Inc.,* 206 Kan 654, 481 P2d 980, 984-85 (1971).

No case has been cited to us in which it has been held that a plaintiff with a torn cartilage in the knee must submit to surgery to remove the damaged cartilage or be barred, as a matter of law, from seeking damages for an otherwise permanent injury, at least in the absence of such evidence.[4]

In numerous cases involving the question whether a plaintiff, to minimize damages, should have submitted to surgery or other treatment for the correction of conditions consequent upon a fractured or dislocated bone, it has been held, usually upon conflicting evidence as to the seriousness and effect of the treatment, that the jury should be permitted to decide whether the refusal of treatment was justified. See Annot., 48 ALR2d 346, 376 (1956), and cases cited therein. This court has arrived at the same result, in effect, in cases involving hernias. *Guild v. Portland Ry L & P Co.,* 64 Or 570, 573-575, 131 P 310 (1913). See also *Wells v. Clark & Wilson Lbr. Co., supra* at 325-26, and *Bly*

---

[4] In Bowers v. Lumbermen's Mutual Casualty Company, 131 So 2d 70 (La Ct App 1961), plaintiff suffered a torn cartilage, as in this case, but there was testimony that the risk involved was extremely small and that plaintiff refused to submit to surgery. Also, the court in that case exercised its power (which this court does not have) to re-examine the facts found by the jury and to reduce the amount of the verdict. (See Oregon Constitution, Art VII, § 3 (Amended).)

Casimer v. Herman, 28 Wis 2d 437, 137 NW2d 73 (1965), cited by defendant, is not in point on its facts.

*v. Moores Motor Co., supra* at 536-39. Cf. *Bohle v. Matson Navigation Co.,* 243 Or 196, 201-202, 412 P2d 367 (1966).

Also, as stated by McCormick, *supra* at 136-37, "[t]he courts * * * are cautious about insisting that due care requires submission to an operation."

It is not necessary for us to decide whether, in order for a defendant to be entitled to have the issue of mitigation of damages submitted to a jury in such a case, there must be evidence relating to the degree of risk involved in such an operation or that the plaintiff was advised to submit to a surgical operation. It is also not necessary for us to decide in this case what particular factors are proper for consideration by a jury in such a case.

■ We hold, however, that under the facts and circumstances of this case the evidence supporting defendant's contention that plaintiff was required to submit to surgery upon her knee and the related contention that, for failure to do so, she is barred from claiming damages for a permanent injury to her knee, were not so clear and conclusive as to make it proper for the court to decide those questions in this case as a matter of law. This is not to say, of course, that defendant was not entitled to offer evidence of these questions and have them submitted to the jury under appropriate instructions.

After examining the record in this case we also hold that testimony was offered by plaintiff from which, if believed by the jury, it could properly find that plaintiff has suffered a permanent injury, and one which interferes with her normal and usual activities, including those relating to her work as a substitute teacher. It follows that the trial court did not

err in submitting that issue to the jury or in instructing it on life expectancy tables. The verdict of the jury was supported by substantial evidence and the judgment of the trial court is affirmed.

MCALLISTER, J., concurs in the result.