711 P.2d 660

**Richard Stuart CHANCELLOR and Eleanor T. Chancellor, husband and wife, Plaintiffs/Appellees,**

v.

**Katie Scarlett TAYLOR and Jacob T. Taylor, wife and husband, Defendants/Appellants.**

No. 2 CA–CIV 5470.

Court of Appeals of Arizona, Division 2, Department A.

Dec. 12, 1985.

Leon Thikoll, Tucson, for plaintiffs/appellees.

Fish, Duffield, Miller, Young, Adamson & Alfred, P.C. by Arthur H. Miller and K. Alexander Hobson, Tucson, for defendants/appellants.

## OPINION

HOWARD, Judge.

This is an appeal from a $55,375 jury verdict in an automobile accident case. Appellants contend the verdict was the result of passion and prejudice, requiring reversal. We affirm.

Considered in the light most favorable to upholding the verdict, the evidence shows that Richard Chancellor suffered two permanent injuries from the accident of January 1983, one to his knee and another to his foot. He completely tore the anterior cruciate ligament in his right knee. This ligament prevents excessive backward and forward motion of the knee as well as excessive rotational motion. Physical therapy might help, but would not offer complete relief and should the muscles weaken the knee would revert to the same situation.

His own physician, Dr. Wang, an orthopedic surgeon, whose office treats all of the orthopedic injuries on the intercollegiate teams at the University of Arizona, testified that there is a surgical procedure which can be undertaken to reconstruct or to make a new ligament to replace the old one. The surgeon uses part of the tendon that comes from the kneecap and makes it into a new ligament. The doctor makes a tunnel through the tibia or leg bone into the joint and then another tunnel into the femur or thigh bone so that he can anchor this new ligament in the exact place that the original ligament was anchored. Dr. Wang testified that the operation can be very successful, if properly done, and that it has permitted their office to allow all athletes that have had the operation to return to their sport.

The operation is done under general anesthesia in the hospital requiring an estimated five-day stay. The fee for the doctors would vary between $1,600, and $2,800 depending on the extent of damage, and in addition to the main surgeon's fee there would be an assistant surgeon's fee that usually runs 20 to 25 percent of the surgeon's fee. In some cases, physical therapy is necessary over a period of four to six weeks after the operation, perhaps as frequently as three times a week during that period. For a man of Chancellor's age, 46 years, it would take four to six weeks after the operation before he could drive an automobile, and it would be six months before he could do anything in the way of sports activities. If the operation were successful, after six months Chancellor would be able to restart the athletic activity which he had been doing, including racquetball, tennis and jogging.

Appellees' expert witness testified that Chancellor received a permanent injury, Morton's neuroma, as a result of the accident. This injury produces a pain in the foot that is usually worse when walking or when wearing shoes. In extreme cases, it can produce a limp. There is a surgical procedure that is probably close to 100 percent successful. Although there can be problems, they are not common. The surgery is performed in the hospital under general anesthesia and would cost up to approximately $1,500. The recuperation time for a 46-year-old-man would be three to five days. After that time Chancellor would be able to get around comfortably on his foot although it would take a good three to four weeks longer before Chancellor, a real estate developer, would be able to tramp around in the field inspecting land.

Prior to being injured in the accident, appellee was involved in many athletic activities. Appellee's injuries required him to curtail these activities. Prior to the accident he played handball twice a week on

the average, jogged two miles three to five times a week and played racquetball approximately two times per week. Appellee and his wife played doubles with other couples about once a month. In addition, as a real estate developer, appellee is required to make frequent visits in the field and the injuries have proved to be a burden.

Chancellor testified at trial that he had been subjected to major operations in the past and was very fearful of undergoing surgery twice under a general anesthetic. His lawyer argued to the jury that Chancellor had chosen to attempt to avoid surgery, that he knows his own body and is entitled to work on his own problem and tolerate it as best as he can. He argued that the jury should not punish his client for not having the surgeries performed on his knee and foot. He then suggested that the jury should take into consideration the life expectancy of his client, 32 years, in arriving at its judgment for damages.

Although appellants did object to an instruction on life expectancy, they did not do so on the basis that appellee's injuries were not permanent, but rather on the basis that it had not been requested by either counsel. The trial court overruled this objection and instructed the jury on Chancellor's life expectancy.

It is easy to see how the jury arrived at its decision in this case. The evidence showed that Chancellor was going to have a bad knee and a sore foot for the rest of his life. The jury simply followed the argument of appellee's counsel and the instructions of the trial court. Although the defense never raised it in the trial court nor does it do so on appeal, the crux of the problem in this case is the duty of an injured person to submit to surgery to minimize tort damages. In this respect an extensive annotation on the subject can be found in 62 A.L.R.3d 9 (1975). See also Restatement (Second) of Torts § 918, Comment d (1979). Of special interest is *Zimmerman v. Ausland*, 266 Or. 427, 513 P.2d 1167 (1973), a case also involving a knee injury, which sets forth the applicable rule:

"It is equally well established that the plaintiff in a personal injury case cannot claim damages for what would otherwise be a permanent injury if the permanency of the injury could have been avoided by submitting to treatment by a physician, including possible surgery, when a reasonable person would do so under the same circumstances. [citations omitted.]

In considering whether plaintiff is required to mitigate her damages by submitting to surgery we must bear in mind that while plaintiff has the burden of proof that her injury is a permanent injury, defendant has the burden of proving that plaintiff unreasonably failed to mitigate her damages by submission to surgery. [citations omitted.] However, evidence that plaintiff could reasonably have avoided all or part of the damages is admissible under a general denial. [citations omitted.]

Ordinarily, of course, the questions whether an injury is permanent and whether a reasonable person under the same circumstances would submit to surgery are questions of fact for the jury, assuming that substantial evidence is offered. Also, in the ordinary case, both issues would be submitted to the jury under appropriate instructions." 266 Or. at 432, 513 P.2d at 1169.

■ Appellants never requested an instruction on mitigation of damages, thus the question was not submitted to the jury. From the state of the record, we are unable to say as a matter of law that appellees failed to mitigate damages.

■ Where the size of a jury's verdict is brought into question, the trial court has the initial responsibility of determining whether the verdict is excessive. *Braun v. Moreno*, 11 Ariz.App. 509, 466 P.2d 60 (1970). In making its determination, the trial court is afforded the greatest possible discretion. *Creamer v. Troiano*, 108 Ariz. 573, 503 P.2d 794 (1972). Where the trial court has refused to interfere with the jury's determination of damages, this court cannot impose its own judgment on the issue unless we are convinced that the ver-

dict is so outrageously excessive as to suggest, at first blush, passion or prejudice. *Garcia v. City of South Tucson*, 131 Ariz. 315, 640 P.2d 1117 (App.1981). We do not find the verdict here to be excessive.

Affirmed.

HATHAWAY and FERNANDEZ, JJ., concur.