Argued and submitted April 18, affirmed July 27, reconsideration denied September 9, petition for review allowed October 18, 1983 (295 Or 773)
See 296 Or 246, 674 P2d 596 (1984)

In the Matter of the Compensation of
Patricia R. Nelson, Claimant.

NELSON,
*Petitioner,*

*v.*

EBI COMPANIES,
*Respondent.*

(81-1037; A25536)

666 P2d 1360

Richard W. Condon, Salem, argued the cause and filed the brief for petitioner.

James N. Westwood, Portland argued the cause for respondent. With him on the briefs were Donald P. Bourgeois and Miller, Nash, Yerke, Wiener & Hager, Portland.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

Warden, J., dissenting.

## GILLETTE, P. J.

Claimant appeals from an order of the Workers' Compensation Board that reversed a referee's order awarding her 25 percent unscheduled permanent partial disability and reinstated a determination order that awarded her only 5 percent unscheduled disability. The Board held that claimant's failure to continue a weight loss program recommended by her physicians was keeping her from recovering from her injury as fully as she otherwise would and downrated her degree of permanent partial disability accordingly. We affirm.

Claimant is a 30-year old certified nurse's aid who sustained a lower back injury on June 18, 1979, when, in the course of her employment at a convalescent center, she attempted to grab a patient who fell while being moved from a wheelchair to a bed. Claimant is 5' 4" tall and, at the time of injury, weighed 300 pounds.

Dr. Stellflug, a chiropractic physician, initially treated claimant on June 20, 1979. He diagnosed acute lumbar and cervical strains and, in his report of August 10, 1979, noted that her obesity was prolonging her healing time. He referred her to Dr. Todd, an orthopedic surgeon, for evaluation. Dr. Todd's evaluation report concluded that claimant had sustained an acute low back strain and that "her only source of help" was weight reduction.

In February, 1980, Dr. Stellflug referred claimant to Dr. Lautenbach, an internist. Dr. Lautenbach's March 7, 1980, report confirmed the earlier diagnoses, noted that she was suffering from anxiety depression and acknowledged that her healing process was hindered by her excessive weight. Dr. Pasquesi examined claimant for evaluation on March 17, 1980, at the request of respondent. At that time she weighed 290 pounds. Dr. Pasquesi found no objective cause for her symptoms "other than obesity and a large abdomen." He did note, however, that her subjective symptoms were consistent with lumbosacral instability.

Apparently because of Dr. Pasquesi's report, respondent requested further information from Dr. Todd, who stated in a report dated June 27, 1980, that claimant had "concrete radiographic evidence of degenerative disc disease * * *"

and that she was "seriously working on a weight control program." In April, 1980, Dr. Todd had arranged for an endocrinological evaluation by Dr. Bouma. In his September 15, 1980, report Dr. Todd stated that Dr. Bouma had found claimant to be euthyroid, nondiabetic and not suffering from Cushing's Syndrome; *i.e.*, he found no physiological cause for her obesity.[1]

In October, 1980, claimant once again consulted with Dr. Lautenbach, who placed her on a 1,000 calorie per day diet and medication. On March 11, 1981, Dr. Lautenbach reported that claimant had achieved a 37 and one-half pound weight loss. However, on July 21, 1981, prior to the hearing, Dr. Lautenbach signed a statement, prepared by respondent, that no further progress had been seen in claimant's weight loss for two or three months, that she had lost any enthusiasm to proceed further with the weight loss program and that her weight problem was completely within her control.[2]

---

[1] There is no report from Dr. Bouma in the record.

[2] The letter from respondent to Dr. Lautenbach, including his response, reads:

"Dear Dr. Lautenbach:

"I understand your opinion in this matter to be as follows: that you have treated the claimant for some time regarding her weight problem.

"The weight loss program for claimant in your opinion is not working. The claimant has reduced her weight from 137 kilograms to 119 kilograms through the initial portion of the program, but no further progress has been noted in the last two or three months. You are not aware that there has been any weight gain either. It is your opinion that the claimant has lost any enthusiasm or desire to proceed further with the weight loss program.

"You have not heard any complaints from Mrs. Nelson regarding her low back in the last several months. It is your opinion that the low back problem is minimal at best.

"Because of the claimant's overweight state, she is more inclined to have repetitive back injuries and will always have such injuries throughout her life due to her weight problem. If she lost 100 pounds, she would probably have fewer back complaints.

"Her overweight problem is completely within her control and is entirely voluntary. Her weight loss is entirely a matter of willpower and desire and is not caused by involuntary factors.

"If you agree with the foregoing, would you please signify below.

"  X   Yes, the foregoing is correct.

"_____ No, the foregoing is not correct."

The Determination Order found that claimant had a 30 percent, unscheduled disability but awarded her only 5 percent, because the Evaluation Division believed that most of her disability was attributable to voluntary obesity.[3] Claimant requested a hearing. The referee found that claimant's excessive weight significantly contributed to her overall disability. He found, however, that her overall disability was probably in excess of 30 percent and rated disability due to the injury at 25 percent. He also found that claimant had not wilfully disobeyed her doctor's orders and that she had shown that she had tried to lose weight.

The Board reversed the referee and reinstated the Determination Order, concluding that, "although claimant made some effort to lose weight, considering all the factors, it was not a reasonable effort." In reaching its conclusion, the Board reasoned as follows:

> "Resolution of the parties' contentions requires a discussion of two fundamental but potentially inconsistent principles of workers compensation law. The first is that the employer takes the worker as he finds him; the second is that an injured worker has a duty to mitigate his or her damages. The principle that the employer takes the worker as he finds him is recognized in that a worker is entitled to compensation for the disabling effects of a pre-existing, nonindustrial condition, provided that the pre-existing condition and work activity combined to produce temporary or permanent disability or required medical services, and the work activity were [sic] a material contributing cause. *Hoffman v. Bumble Bee Company,* 15 Or App 253 (1973). The principle that an injured party has a duty to mitigate damages is recognized in that a worker is not entitled to an award of permanent disability to the extent that the worker unreasonably refuses treatment for a pre-existing condition where such treatment would reduce the extent of disability of the compensable condition. *Brecht*

---

[3] The Determination Order, issued on January 30, 1981, stated:

"The Evaluation Division finds your permanent partial disability to be 96 degrees for 30 percent unscheduled disability resulting from injury to your low back. However, as you have failed to follow medical advice in weight loss, which reasonably could have been expected to reduce your disability, the Department, pursuant to ORS 656.325(4), finds your award of compensation should be reduced."

As will appear, *post,* the statute relied on in the determination order was inappropriate.

*v. SAIF,* 12 Or App 615 (1973); *Wilson v. Gilchrist Lumber Co.,* 6 Or App 104 (1971)."

The Board then applied these principles to the rating of disability of a compensable injury affected by obesity and concluded:

"(1)   A worker is entitled to compensation when work activity interacts with obesity to cause an injury which results in permanent disability, provided that work activity was a material contributing cause for the injury; but (2) a worker is not entitled to compensation for disability attributable to obesity to the extent that (a) the evidence establishes that weight loss would reduce or eliminate the degree of disability, and (b) it is within the voluntary control of the worker to follow such medical advice and lose weight, and (c) the worker has not made a reasonable effort to follow such medical advice. We further conclude that, where a case involves the rating of disability and the issue is raised, the burden of proof is on the claimant to show that he or she did not unreasonably fail to follow the medical advice to lose weight."

This court has had occasion to address an analogous problem. In *Clemons v. Roseburg Lumber Co.,* 34 Or App 135, 137-38, 578 P2d 429 (1978), we identified

"* * * two threads running through our cases dealing with the effect upon compensation of unreasonable refusal to submit to medical treatment which might promote recovery and expedite reintegration into the labor market: one relating to proof and the other to restoration. The first emphasizes the burden upon the worker to prove the extent of disability. * * * The other line of cases treats refusal of available treatment as a negative factor in determining extent of compensable incapacity." (Citations omitted.)

We stated in *Clemons* that the rationale for reduction of benefits when treatment is unreasonably refused is that an employer should not be held responsible for the full extent of a claimant's permanent disability if there is significant likelihood that such disability is partly attributable to the claimant's unreasonable rejection of appropriate treatment. *Clemons* also identified the corollary objective of the Workers' Compensation Act to favor restoration of the worker over compensation for permanent loss. *Clemons v. Roseburg Lumber Co., supra,* 34 Or App at 138.

*Clemons* differed from the present case in that it involved a claimant's refusal to submit to a *surgical* procedure. Pursuant to her employer's request, the Board had authorized suspension of benefits. A determination order was then issued, terminating the claimant's temporary total disability payments and awarding an amount equal to 10 percent unscheduled permanent partial disability. On review, the Board agreed that the claimant's disability exceeded 10 percent but refused to increase the award, because it reasoned that the employer should not be penalized for the claimant's refusal to mitigate her injury. We reversed and held that, under the facts of that case, the claimant was not required to submit to a recommended surgical procedure. *Clemons v. Roseburg Lumber Co., supra,* 34 Or App at 140. Citing 1 Larson, Workmen's Compensation Law, § 13.22 at 3-398 (1978), we stated that the test for determining whether a permanent disability award should be adjusted because of the claimant's refusal to submit to recommended treatment was "reasonableness":

> "* * * The relevant inquiry is whether, if compensation were not an issue, an ordinarily prudent and reasonable person would submit to the recommended treatment. Such a determination must be based upon all relevant factors, including the worker's present physical and psychological condition, the degree of pain accompanying and following his treatment, the risks posed by the treatment and the likelihood that it would significantly reduce the worker's disability. *Grant v. State Industrial Acc. Com.,* 102 Or at 45; *see* 1 Larson, Workmen's Compensation Law, supra." 34 Or App at 139.

In the present case, the Board took note of ORS 656.325(4), enacted subsequent to the events giving rise to *Clemons,*[4] which provides an analogous rule:

> "When the employer of an injured worker, or the employer's insurer determines that the injured worker has failed to follow medical advice from the attending physician or has failed to participate in or complete physical restoration or

---

[4] "Subsequent to the events of this case, the legislature * * * amended ORS 656.325, adding [subsection (4)] * * *. This provision is inapplicable to the case at bar and we do not decide whether this addition to the statute changed the principles set forth herein or merely codified existing law." *Clemons v. Roseburg Lumber Co., supra,* 34 Or App at 139 n 2.

vocational rehabilitation programs prescribed for the worker pursuant to ORS 656.001 to 656.794, the employer or insurer may petition the director for reduction of any benefits awarded the worker. Notwithstanding any other provision of ORS 656.001 to 656.794, if the director finds that the worker has failed to accept treatment as provided in this subsection, the director may reduce any benefits awarded the worker by such amount as the director considers appropriate."

The Board, while correctly realizing that it could not apply ORS 656.325(4) "directly" under the circumstances of this case, analogized that statute to common law principles pertaining to the duty of one who has suffered personal injury to minimize his damage:[5]

"None of the provisions of ORS 656.325 directly pertain to the issue in this case. Subsections (1) and (2) of that statute authorize suspension or reduction of temporary disability payments under various circumstances. Subsections (3) and (4) presume that a claimant has received an award of permanent disability. The issue here is rating of extent of permanent disability. We understand ORS 656.325 to be an application to specific circumstances of the general principles, applicable to the circumstances of this case, that an injured party has a duty to mitigate damages and that the worker's compensation system is generally not liable for pre-existing, nonindustrial conditions."

We agree with this analysis, which we think is consistent with our holding in *Clemons.*

Applying the principle of an obligation to not refuse unreasonably to take steps which will minimize the extent of disability to the facts of this case, we agree with the Board's disposition. This record shows that claimant was able to lose weight for a while, but she eventually lost enthusiasm for her prescribed weight program. There is no indication in this record other than that she could have continued to lose weight, had she gone back to the regimen Dr. Lautenbach prescribed. There was no medical impediment to success, no severe pain or other contraindications; all that was required was an exercise of will. Her failure to make further efforts was unreasonable.

Affirmed.

---

[5] *See Zimmerman v. Ausland,* 266 Or 427, 513 P2d 1167 (1973).

**WARDEN, J.,** dissenting.

The Board's opinion—adopted by the majority—is flawed in three primary respects: first, it blurs the distinction between claimant's burden of proof to show the extent of her disability with respondent's burden to show that claimant unreasonably failed to follow medical advice; second, it equates the question whether claimant failed to follow "medical advice" with the question whether she achieved a recommended "weight loss"; and third, it misapplies the "reasonableness" criteria of *Clemons v. Roseburg Lumber Company,* 34 Or App 135, 578 P2d 429 (1978). Accordingly, I dissent.

1.   As a threshold matter, the majority errs in allocating the burden of proof to claimant on the issue of whether or not she "unreasonably failed to follow medical advice." The majority agrees with the Board's conclusion "that, where a case involves the rating of disability and the issue is raised, the burden of proof is on the claimant to show that he or she did not unreasonably fail to follow medical advice to lose weight."

Claimant weighed 300 pounds when she was hired. She did not exceed that weight at any time during her employment; respondent does not contend otherwise. Claimant is entitled to compensation for the disabling effects of her pre-existing, nonindustrial condition, where that condition and her work combined to produce her disability. *See Hoffman v. Bumble Bee Seafoods,* 15 Or App 253, 515 P2d 406 (1973). Her burden is to establish the extent of that disability. *Clemons v. Roseburg Lumber Company, supra,* 34 Or App at 137. In the present case, the referee determined that claimant's disability was "in excess of 30 percent." When respondent seeks to reduce claimant's disability award by contending that she "unreasonably failed to follow medical advice," that argument is in the nature of an affirmative defense and the burden of proof is properly allocated to respondent. *See Folmer Ice Cream Co. v. Workmen's Comp. App Bd.,* 17 Pa Cmwlth Ct 34, 330 A2d 584 (1975).

2.   The linchpin of the majority's analysis is that claimant "unreasonably failed to follow medical advice" to lose weight. Respondent contends that the record overwhelmingly demonstrates that claimant had consistently been advised of the necessity of substantial weight loss. In fact, the

record does show that claimant was advised by Drs. Todd and Stellflug as early as June, 1979, to lose weight and that Dr. Todd had continually thereafter so advised claimant.

Respondent, however, cites nothing in the record to show that Drs. Todd or Stellflug prescribed any type of weight loss regimen for claimant. Indeed, Dr. Todd acknowledged in his November 21, 1980, report to respondent that he did "not engage in weight control programs, and, therefore, shall not pretend to monitor [claimant's]."

In this case of first impression, involving a reduction of an obese claimant's disability benefits for her alleged unreasonable failure to follow "medical advice," we need to examine carefully the Board's use of the term "medical advice." As acknowledged by the majority, the instant facts differ from *Clemons;* in that case the failure to follow medical advice involved a recommended surgical procedure. In *Clemons,* therefore, the surgery was the recommended corrective procedure, and there was no question as to the application of the term "medical advice."[1] In the present case, however, the question is not so easily resolved. We may not simply examine the record to see how many times claimant was told to "lose weight." Weight loss should properly be viewed as an objective that—barring physical impediments—can be obtained by careful adherence to a prescribed weight loss regimen. It is the unreasonable failure to follow that prescribed regimen that provides the authority, if any, for a reduction of disability benefits.[2]

---

[1] The majority notes that the Board correctly "analogized" ORS 656.325(4) to common law principles of mitigation that are applicable to the circumstances to this case. OAR 436-54-286 was promulgated pursuant to ORS 656.325 and defines failure to follow "medical advice" in subsection (1) as the failure to submit to "recommended surgical treatment" and in subsection (2) as the "failure of the worker to remain under a doctor's care, seek reasonable periodic examinations or participate in a treatment regimen."

[2] Compare, for example, *Folmer Ice Cream Co. v. Workmen's Comp. App. Bd., supra,* in which an obese claimant suffered a back injury that was inoperable due to her excessive weight. In that case, the claimant submitted to institutionalization in order to lose weight. During the two weeks she was hospitalized, her weight fell from 300 pounds to 279 pounds. However, a reversal occurred, and her weight increased to 289 pounds. She then left the hospital. The employer argued, *inter alia,* that the claimant's failure to lose the required amount of weight constituted unreasonable refusal to follow medical advice under Pennsylvania law. The court, adopting the reasoning of the

The record shows that claimant received medical advice on weight loss only from Dr. Lautenbach. From June, 1979, to February, 1980, claimant paid for Dr. Lautenbach's services herself. She testified at the hearing that, during this period of time, she could not afford to consult with Dr. Lautenbach on a regular basis. By February, 1980, respondent agreed to pay for Dr. Lautenbach's services. According to Dr. Lautenbach's October 10, 1980, report, however, claimant had seen him only twice during 1980. In that report, he stated that claimant "finally was beginning to realize the need for weight reduction." According to his March 11, 1981, report, claimant continued her therapy from October, 1980, to March, 1981, "as agreed upon." That therapy included a 1,000 calorie per day diet as well as prescribed diet pills. Additionally, claimant, at her own expense, attended Weight Watchers in early 1981. Significantly, it was during this period of time, October, 1980, to March, 1981, that claimant achieved a 37 and one-half pound weight loss.

The record establishes, therefore, that claimant received "medical advice" only from Dr. Lautenbach and that through March, 1981, claimant followed that advice "as agreed upon." The proper analysis, then, must focus on that period of time from April, 1981, to the date of the hearing, July, 1981—during which she lost an additional 2.2 pounds—to determine whether claimant unreasonably failed to follow Dr. Lautenbach's prescribed regimen for weight loss.

3. Reasonableness is a question of fact, *Clemons v. Roseburg Lumber Company, supra,* 34 Or App 139, *citing Grant v. State Industrial Acc. Com.,* 102 Or 26, 46, 201 P 438 (1921), taking into account the worker's perspective. *Clemons v. Roseburg Lumber Company, supra,* 34 Or App at 139. The only proof submitted by respondent with respect to the period of time at issue was the letter written by respondent and signed

Pennsylvania Workmen's Compensation Appeal Board, correctly distinguished weight loss as an objective from refusal of t[rea]tment:

"'[I]n this case claimant did not r[ai]se the weight reducing procedures of the employer. She pursued them and obvi[ou]sly they failed. * * * This is a case where claimant did not refuse treatment, b[ut] where the treatment did not achieve the desired results.'"

by Dr. Lautenbach. That letter is merely a series of conclusions that fails to provide *any* indicia of claimant's unreasonable failure to follow Dr. Lautenbach's advice. It clearly falls far short of the inquiry mandated by *Clemons*.

In summary, the majority first errs by burdening claimant—under the rubric of proving the extent of her disability—with what is in essence the task of disproving respondent's affirmative defense. Secondly, the majority misconstrues the term "medical advice." In so doing, it affirms the Board's reliance on instructions given by Dr. Todd to claimant to "lose weight," although Dr. Todd, by his own admission, was not qualified to advise claimant with respect to a weight loss regimen. And, finally, even if the letter of July 21, 1981, prepared by respondent and signed by Dr. Lautenbach, provides a colorable claim that claimant failed to follow "medical advice," it is devoid of any evidence whatsoever that claimant *unreasonably* failed to do so. Taking that letter at face value, the conclusion the majority draws from it, *i.e.,* that claimant, who in the nine preceding months had shed nearly 40 pounds, acted unreasonably because her doctor had noted no weight loss (or gain) in the last two or three of those months and had "lost enthusiasm" for the weight loss program, is itself unreasonable.

I therefore respectfully dissent.