Argued and submitted December 6, 1983, affirmed January 10, 1984

In the Matter of the Compensation of
Patricia R. Nelson, Claimant.

NELSON,
*Petitioner on review,*

*v.*

EBI COMPANIES,
*Respondent on review.*

(No. 81-1037, CA A25536, SC 29918)

674 P2d 596

Richard W. Condon, Salem, argued the cause and filed the petition and brief for petitioner on review.

James N. Westwood, Portland, argued the cause for respondent on review. With him on the brief were Donald P. Bourgeois and Miller, Nash, Yerke, Wiener & Hager, Portland.

Before Peterson, Chief Justice, and Lent, Linde, Campbell, Carson and Jones, Justices.

JONES, J.

**JONES, J.**

Claimant appealed from an order of the Workers' Compensation Board that reversed a referee's order awarding her 25 percent unscheduled permanent partial disability and reinstated a determination order awarding her only 5 percent unscheduled disability. The Board held that claimant's failure to continue a weight-loss program recommended by her physicians was keeping her from recovering from her injury as fully as she otherwise would and down-rated her degree of permanent partial disability accordingly. The Court of Appeals affirmed the holding of the Board. *Nelson v. EBI Companies,* 64 Or App 16, 666 P2d 1360 (1983). We allowed claimant's petition to review the issue of which party bears the burden of proving whether claimant unreasonably failed to follow needed medical advice or otherwise to mitigate damages.

The Court of Appeals set out the history and facts of this case as follows:

"Claimant is a 30-year-old certified nurse's aid who sustained a lower back injury on June 18, 1979, when, in the course of her employment at a convalescent center, she attempted to grab a patient who fell while being moved from a wheelchair to a bed. Claimant is 5' 4" tall and, at the time of injury, weighed 300 pounds.

"Dr. Stellflug, a chiropractic physician, initially treated claimant on June 20, 1979. He diagnosed acute lumbar and cervical strains and, in his report of August 10, 1979, noted that her obesity was prolonging her healing time. He referred her to Dr. Todd, an orthopedic surgeon, for evaluation. Dr. Todd's evaluation report concluded that claimant had sustained an acute low back strain and that 'her only source of help' was weight reduction.

"In February, 1980, Dr. Stellflug referred claimant to Dr. Lautenbach, an internist. Dr. Lautenbach's March 7, 1980, report confirmed the earlier diagnoses, noted that she was suffering from anxiety depression and acknowledged that her healing process was hindered by her excessive weight. Dr. Pasquesi examined claimant for evaluation on March 17, 1980, at the request of respondent. At that time she weighed 290 pounds. Dr. Pasquesi found no objective cause for her symptoms 'other than obesity and a large abdomen.' He did note, however, that her subjective symptoms were consistent with lumbosacral instability.

"Apparently because of Dr. Pasquesi's report, respondent requested further information from Dr. Todd, who stated in a report dated June 27, 1980, that claimant had 'concrete radiographic evidence of degenerative disc disease * * *' and that she was 'seriously working on a weight control program.' In April, 1980, Dr. Todd had arranged for an endocrinological evaluation by Dr. Bouma. In his September 15, 1980, report Dr. Todd stated that Dr. Bouma had found claimant to be euthyroid, nondiabetic and not suffering from Cushing's Syndrome; *i.e.,* he found no physiological cause for her obesity.

"In October, 1980, claimant once again consulted with Dr. Lautenbach, who placed her on a 1,000 calorie per day diet and medication. On March 11, 1981, Dr. Lautenbach reported that claimant had achieved a 37 and one-half pound weight loss. However, on July 21, 1981, prior to the hearing, Dr. Lautenbach signed a statement, prepared by respondent, that no further progress had been seen in claimant's weight loss for two or three months, that she had lost any enthusiasm to proceed further with the weight loss program and that her weight problem was completely within her control.

"The Determination Order found that claimant had a 30 percent, unscheduled disability but awarded her only 5 percent, because the Evaluation Division believed that most of her disability was attributable to voluntary obesity. Claimant requested a hearing. The referee found that claimant's excessive weight significantly contributed to her overall disability. He found, however, that her overall disability was probably in excess of 30 percent and rated disability due to the injury at 25 percent. He also found that claimant had not wilfully disobeyed her doctor's orders and that she had shown that she had tried to lose weight." (Footnotes omitted.) *Id.* at 18-20.

The Board reversed the referee and reinstated the Determination Order, concluding that, "although claimant made some effort to lose weight, considering all the factors, it was not a reasonable effort." In reaching its conclusion, the Board reasoned as follows:

"Resolution of the parties' contentions requires a discussion of two fundamental but potentially inconsistent principles of workers compensation law. The first is that the employer takes the worker as he finds him; the second is that an injured worker has a duty to mitigate his or her damages. The principle that the employer takes the worker as he finds him is recognized in that a worker is entitled to compensation

for the disabling effects of a pre-existing, nonindustrial condition, provided that the pre-existing condition and work activity combined to produce temporary or permanent disability or required medical services, and the work activity were *[sic]* a material contributing cause. *Hoffman v. Bumble Bee Company,* 15 Or App 253 (1973). The principle that an injured party has a duty to mitigate damages is recognized in that a worker is not entitled to an award of permanent disability to the extent that the worker unreasonably refuses treatment for a pre-existing condition where such treatment would reduce the extent of disability of the compensable condition. *Brecht v. SAIF,* 12 Or App 615 (1973); *Wilson v. Gilchrist Lumber Co.,* 6 Or App 104 (1971)."

The Board then applied these principles to the rating of disability of a compensable injury affected by obesity and concluded:

"(1) A worker is entitled to compensation when work activity interacts with obesity to cause an injury which results in permanent disability, provided that work activity was a material contributing cause for the injury; but (2) a worker is not entitled to compensation for disability attributable to obesity to the extent that (a) the evidence establishes that weight loss would reduce or eliminate the degree of disability, and (b) it is within the voluntary control of the worker to follow such medical advice and lose weight, and (c) the worker has not made a reasonable effort to follow such medical advice. We further conclude that, where a case involves the rating of disability and the issue is raised, *the burden of proof is on the claimant to show that he or she did not unreasonably fail to follow the medical advice to lose weight.*" (Emphasis added.)

The Court of Appeals addressed an analogous problem in *Clemons v. Roseburg Lumber Co.,* 34 Or App 135, 137-38, 578 P2d 429 (1978), and identified

"* * * two threads running through our cases dealing with the effect upon compensation of unreasonable refusal to submit to medical treatment which might promote recovery and expedite reintegration into the labor market: one relating to proof and the other to restoration. The first emphasizes the burden upon the worker to prove the extent of disability. * * * The other line of cases treats refusal of available treatment as a negative factor in determining extent of compensable incapacity." (Citations omitted.)

■■  The Court of Appeals stated in *Clemons* that the rationale for reduction of benefits when treatment is unreasonably refused is that an employer should not be held responsible for the full extent of a claimant's permanent disability if there is significant likelihood that such disability is partly attributable to the claimant's unreasonable rejection of appropriate treatment. We agree with the test set forth in *Clemons,* 34 Or App at 139, for determining whether a permanent disability award should be adjusted because of the claimant's refusal to submit to recommended treatment. The test is "reasonableness" in this context:

> "* * * The relevant inquiry is whether, if compensation were not an issue, an ordinarily prudent and reasonable person would submit to the recommended treatment. Such a determination must be based upon all relevant factors, including the worker's present physical and psychological condition, the degree of pain accompanying and following his treatment, the risks posed by the treatment and the likelihood that it would significantly reduce the worker's disability. *Grant v. State Industrial Acc. Com.,* 102 Or at 45; *see* 1 Larson, Workmen's Compensation Law [§ 13.22]."

In the present case, the Board commented on the applicability of ORS 656.325(4), which provides:

> "When the employer of an injured worker, or the employer's insurer determines that the injured worker has failed to follow medical advice from the attending physician or has failed to participate in or complete physical restoration or vocational rehabilitation programs prescribed for the worker pursuant to ORS 656.001 to 656.794, the employer or insurer may petition the director for reduction of any benefits awarded the worker. Notwithstanding any other provision of ORS 656.001 to 656.794, if the director finds that the worker has failed to accept treatment as provided in this subsection, the director may reduce any benefits awarded the worker by such amount as the director considers appropriate."

The Board said:

> "None of the provisions of ORS 656.325 directly pertain *[sic]* to the issue in this case. Subsections (1) and (2) of that statute authorize suspension or reduction of temporary disability payments under various circumstances. Subsections (3) and (4) presume that a claimant has received an award of permanent disability. The issue here is rating of extent of permanent disability. We understand ORS 656.325 to be an

application to specific circumstances of the general principles, applicable to the circumstances of this case, that an injured party has a duty to mitigate damages and that the worker's compensation system is generally not liable for pre-existing, nonindustrial conditions."

■        ORS 656.325 does not directly apply to this case. However, it indicates that a claimant who has suffered personal injury has a duty to minimize his or her damages in workers' compensation cases. An unreasonable failure to follow needed medical advice is a form of lack of minimization.

In the common law injury case of *Zimmerman v. Ausland,* 266 Or 427, 432, 513 P2d 1167 (1973), this court said:

"In considering whether plaintiff is required to mitigate her damages by submitting to surgery we must bear in mind that while plaintiff has the burden of proof that her injury is a permanent injury, defendant has the burden of proving that plaintiff unreasonably failed to mitigate her damages by submission to surgery. * * *"

■ ■        In workers' compensation cases, we believe the allocation of the burden of proving a claimant unreasonably failed to mitigate damages should follow the common law. We, therefore, hold the Board erred in concluding "where a case involves the rating of disability and the issue is raised, the burden of proof is on the claimant to show that he or she did not unreasonably fail to follow the medical advice [of her physician]." The law allocates to the employer the burden of proof to persuade the trier of fact that the worker unreasonably failed to follow needed medical advice or otherwise to mitigate her damages.

■        The Court of Appeals found in this case

"* * * that claimant was able to lose weight for a while, but she eventually lost enthusiasm for her prescribed weight program. There is no indication in this record other than that she could have continued to lose weight, had she gone back to the regimen Dr. Lautenbach prescribed. There was no medical impediment to success, no severe pain or other contraindications; all that was required was an exercise of will. Her failure to make further efforts was unreasonable." *Nelson v. EBI Companies,* 64 Or App at 23.

It appears to us that the Court of Appeals did make its finding upon the prepondrance of the evidence. We affirm.