Argued and submitted April 28, 2000, affirmed November 14, 2001

In the Matter of the Compensation of
Alfredo R. Hernandez, Claimant.

Alfredo R. HERNANDEZ,
*Petitioner,*

*v.*

SAIF CORPORATION
and Five Star Trees, Inc.,
*Respondents.*

97-10169; A105154

35 P3d 1099

Max Rae argued the cause and filed the brief for petitioner.

Julene Marian Quinn argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Claimant seeks review of an order of the Workers' Compensation Board (Board) that calculated his benefits for temporary partial disability (TPD) compensation at a rate of zero. We affirm.

On November 16, 1997, claimant compensably injured his foot while working as a Christmas tree harvester for employer. His physician authorized temporary total disability (TTD) through November 17, 1997. Employer proposed a modified job for claimant as a tree tallier/tier, and claimant's physician approved claimant for the modified job. The tree tallier/tier position had the same hours and wages as claimant's previous job, with an average weekly wage of $270. Employer would have offered the job to claimant, except that claimant was unable to prove that he possessed a valid social security number after the validity of the number that he had presented at hire was questioned. For the purposes of this case, claimant waived the opportunity to contest that he was in violation of federal immigration laws, that is, that he was an undocumented worker for the time periods for which he sought compensation.

Insurer paid claimant TPD at the full TTD rate for November 19 and 20, 1997, but has paid no other compensation since claimant was approved for modified work. Claimant has neither reached medically stationary status nor been released for regular work. He has earned no wages since the date of his compensable injury on November 16, 1997.

Claimant filed a request for a hearing, seeking additional temporary disability compensation, as well as penalties for insurer's failure to pay temporary partial disability benefits. The administrative law judge (ALJ) issued an order granting TPD in the amount of $3,060.17 to claimant for the period from November 21, 1997, to March 20, 1998. The ALJ reasoned that ORS 656.325(5)(c) authorizes TPD benefits for undocumented workers regardless of job availability. Thus, the ALJ found claimant's benefits were authorized at his full TTD rate because he had no actual wages. The ALJ held that OAR 436-060-0030(7), under which TPD benefits are calculated "as if the worker had begun the employment," exceeded

the director of the Workers' Compensation Department's rule-making authority, because that rule was inconsistent with ORS 656.325(5)(c) and ORS 656.212(2). The ALJ also held that claimant was not entitled to any penalties because insurer had a legitimate doubt as to how to calculate claimant's TPD benefits.

Both claimant and employer requested that the Board review the ALJ's order. The Board held that, while ORS 656.325(5)(c) provides that claimant is entitled to TPD benefits, claimant's TPD rate was zero, because the wage of employer's modified job was the same as claimant's pre-injury job. *See* OAR 436-060-0030(2). The Board also held that claimant was not entitled to penalties for insurer's failure to pay TPD benefits. Claimant now assigns error to the Board's computation of his TPD rate and to the denial of penalties.

Employees who are compensably injured while working are generally entitled to temporary disability benefits. ORS 656.210. However, after being approved by their physician for modified work, employees have a duty to mitigate their wage loss by accepting modified jobs. *Nelson v. EBI Companies*, 296 Or 246, 674 P2d 596 (1984). When the disability becomes only partial, ORS 656.212(2) becomes applicable and prescribes:

> "The payment of temporary total disability pursuant to ORS 656.210 shall cease and the worker shall receive that proportion of the payments provided for temporary total disability which the loss of wages bears to the wage used to calculate temporary total disability pursuant to ORS 656.210."[1]

*See also* OAR 436-060-0030(2).

ORS 656.325(5) addresses various situations in which a worker who is physically able to assume a modified assignment refuses or otherwise fails to do so. That statute provides, as relevant:

---

[1] The statute has been amended since the events in question. Because the amendments are not relevant to our discussion, we quote the present version.

"(a) An insurer or self-insured employer shall cease making payments pursuant to ORS 656.210 and shall commence making payment of such amounts as are due pursuant to ORS 656.212 when an injured worker refuses wage earning employment prior to claim determination and the worker's attending physician, after being notified by the employer of the specific duties to be performed by the injured worker, agrees that the injured worker is capable of performing the employment offered.

"(b) If the worker has been terminated for violation of work rules or other disciplinary reasons, the insurer or self-insured employer shall cease payments pursuant to ORS 656.210 and commence payments pursuant to ORS 656.212 when the attending physician approves employment in a modified job that would have been offered to the worker if the worker had remained employed, provided that the employer has a written policy of offering modified work to injured workers.

"(c) If the worker is a person present in the United States in violation of federal immigration laws, the insurer or self-insured employer shall cease payments pursuant to ORS 656.210 and commence payments pursuant to ORS 656.212 when the attending physician approves employment in a modified job whether or not such a job is available."

Claimant contends that, because he is forbidden by law from performing it, the wages attributable to modified work for purposes of the proration under ORS 656.212(2) and OAR 436-060-0030(2) are *ipso facto* zero. Therefore, he concludes that the TPD rate should be equal to his TTD entitlement. Employer argues, in polar opposition, that an injured undocumented immigrant worker whose employer proposes modified work with a wage equal to that of the worker's former position should be treated as receiving wages in the same amount for both the preinjury job and the modified job. The effect, respondents urge, is that TPD should be fixed at zero—at least under the facts here.

Both sides argue that the other's reading of the statutory scheme amounts to a total evisceration of it. According to respondents, both ORS 656.212(2) and ORS 656.325(5)(c) contemplate a change from TTD to TPD, while claimant's argument would make the two rates equal in every instance.

According to claimant, on the other hand, respondents' understanding of the statutes would make the possibility of TPD payments to the workers wholly ephemeral: The employer could simply fabricate an "unavailable" modified position having the same wage in fiction as the employer's former position had in fact, and thereby defeat any redeemable right to TPD payments. Claimant asserts that such a result is clearly contrary to the legislature's intent, and notes:

> "The legislature could have simply said that illegal aliens don't get [TPD]. If that is what the legislature had intended, ORS 656.325(5)(c) would have said so; rather than requiring that payments commence pursuant to ORS 656.212. * * * The legislature would not have required that payments commence if it had intended that no payments be made."

The Board, in essence, agreed with employer. We do as well. The legislature intended employers of undocumented workers to be able to get the benefit that is available to employers of workers who are able to perform modified work. That means that undocumented workers who are physically able to perform modified work for an employer are to receive TPD payments that reflect a reduction for the income that the workers would have received but for their undocumented status.

Contrary to claimant's contention, that does not mean that undocumented workers will receive no TPD payments once they are able to perform some type of modified work. The modified work that the employer identifies to the physician to shift an undocumented worker to TPD payments must be work that the employer would have offered to the worker at the specified wage rate but for claimant's status as an undocumented worker.[2] Claimant did not dispute that the modified work identified by employer met that standard, so

---

[2] ORS 656.325(5)(c) provides that an undocumented worker can be shifted to TPD payments when the attending physician approves the worker's "employment in a modified job whether or not such a job is available." We understand the language on the availability of the modified job to mean that an employer need not show that the modified job was, in fact, available when the physician approved the worker for it or that the job remained available throughout the time that the worker was eligible to receive temporary disability payments.

the Board did not err in its calculation of his TPD benefits. Our disposition of this issue necessarily resolves the question of claimant's entitlement to a penalty.

Affirmed.