Argued and submitted June 18, 2009, affirmed March 3, 2010

In the Matter of the Compensation of
Dale E. VanBibber, Jr., Claimant.

SAIF CORPORATION
and Larry Hofenbredl-Hofenbredl Timber,
*Petitioners,*

*v.*

Dale E. VANBIBBER, Jr.,
*Respondent.*

Workers' Compensation Board
0603816; A136922

227 P3d 1224

David L. Runner, Special Assistant Attorney General, argued the cause for petitioners. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

R. Adian Martin argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

## LANDAU, P. J.

In this workers' compensation case, the issue is whether an employer may, in a notice of closure, reduce a worker's benefits because of the worker's failure to comply with a prescribed program of physical therapy. The Workers' Compensation Board (board) concluded that the appropriate procedure for reducing benefits because of a failure to follow medical advice is for the employer to request the Director of the Department of Consumer and Business Services (director) to modify the worker's benefits, not to simply reduce the benefits in the notice of closure. Employer seeks review, arguing that the director and the board have authority, when reviewing a notice of closure, to permit a reduction in benefits because of a worker's failure to follow medical advice. We conclude that the board did not err and affirm.

We begin with a brief description of the relevant statutory context for the parties' dispute. At claim closure, an employer is required to determine the amount of benefits, if any, for a worker's permanent partial disability. ORS 656.214(1)(c) defines "permanent partial disability" as

"(A)  Permanent impairment resulting from the compensable industrial injury or occupational disease; or

"(B)  Permanent impairment and work disability resulting from the compensable industrial injury or occupational disease."

ORS 656.214(1)(a) defines "impairment" as

"the loss of use or function of a body part or system due to the compensable industrial injury or occupational disease determined in accordance with the standards provided under ORS 656.726, expressed as a percentage of the whole person."

ORS 656.214(1)(e) defines "work disability" as "impairment modified by age, education and adaptability to perform a given job."

ORS 656.214(2) describes the components of a permanent partial disability award:

"When permanent partial disability results from a compensable injury or occupational disease, benefits shall be awarded as follows:

"(a) If the worker has been released to regular work * * * or has returned to regular work at the job held at the time of injury, the award shall be for impairment only. * * *

"(b) If the worker has not been released to regular work * * * or has not returned to regular work at the job held at the time of injury, the award shall be for impairment and work disability."

"Regular work" means "the job the worker held at injury." ORS 656.214(1)(d). Pursuant to ORS 656.214(2), an award of permanent disability to a worker who has been released to or returned to "regular work" includes benefits "for impairment only." An award to a worker who has *not* been released to regular work includes benefits for impairment *and* work disability. Thus, only a worker who, after claim closure, remains disabled from regular work is entitled to benefits for work disability.

At the pertinent time, ORS 656.726(4)(f)(D)(i) (2003) provided, in part:

"[I]mpairment is the only factor to be considered in evaluation of the worker's disability under ORS 656.214(5) if

"(i) The worker returns to regular work at the job held at the time of injury; [or]

"(ii) The attending physician * * * releases the worker to regular work at the job held at the time of injury and the job is available but the worker fails or refuses to return to that job."

ORS 656.726(4)(f)(D)(i) (2003) emphasizes that, when the worker has either returned to or been released for regular work, impairment is the only factor to be considered in evaluating the worker's disability.[1]

---

[1] Similarly, OAR 436-035-0009(3) provides, in part:

"Only permanent impairment is rated for those workers with a date of injury prior to January 1, 2006 and who:

"(a) Return to and are working at their regular work on the date of issuance; or

With the foregoing in mind, we turn to the facts of this case, which are not in dispute. Claimant, a choker setter, was injured at work in January 2005, when he was struck by a log. SAIF accepted a claim for minimally displaced fractures of the L1, L2, L3, and L4 transverse processes and left flank subcutaneous contusion. In February 2005, at claimant's own request, his attending physician, Dr. McCulley, released him to regular work; after two weeks on the job, however, claimant returned to McCulley with low back pain, and the doctor took him off work.

In April 2005, claimant began treating with Dr. French. French prescribed physical therapy and progressive rehabilitation designed to facilitate claimant's return to regular work. Claimant, however, repeatedly failed to attend his physical therapy sessions. He was placed on an attendance contract and was ultimately discharged from therapy for failure to attend. On September 8, 2005, French released claimant for regular work. His report stated:

> "At this time, I do not believe he will harm himself by returning to work, but it would be prudent to do a progressive work release due to his deconditioning, but again as noted, his fracture should be stable. I would not anticipate problems from that standpoint. I will see him for follow-up on a p.r.n. basis. He is medically stationary at this time."

Claimant's work duties involved occasionally lifting chokers, blocks, ropes, and haywire coils up to 51 - 100 pounds, and fell within the base functional capacity category of "very heavy." After a closing examination on December 29, 2005, French found that claimant had demonstrated an ability to lift 50 pounds, but that he had not demonstrated the ability to occasionally lift and carry 100 pounds. French opined that, if claimant had finished physical therapy, he would be able to occasionally lift and carry 100 pounds. He opined that claimant's limitations were "due to noncompliance, rather than a permanent residual from his work injury." In releasing claimant to work, French restricted

---

"(b) The attending physician or authorized nurse practitioner releases to regular work and the work is available, but the worker fails or refuses to return to that job[.]"

claimant to lifting up to 65 pounds occasionally and provided a return to work form that specified medium capacity work.[2] Based on French's evaluation of claimant's disability, SAIF issued a notice of closure awarding claimant 19 percent "whole person impairment," but no value for "work disability."

SAIF's notice of closure worksheet contains sections for calculating impairment and work disability. For claimant's injury, the impairment section of SAIF's worksheet included calculations for impairment and a benefit of 19 percent for the whole person. The worksheet included no calculation or benefit for work disability. SAIF closed the claim with an award of 19 percent loss of the whole person for impairment to the low back. SAIF's award did not include a value for work disability.

Claimant requested reconsideration by the director pursuant to ORS 656.268,[3] asserting that he was entitled to a value for work disability. In upholding the notice of closure, the director's appellate reviewer explained that "[t]here is not a preponderance of medical opinion which establishes a different level of impairment" from that determined by French. The director rejected claimant's request for a value for work disability, reasoning that French had given claimant a release to regular work due to the accepted conditions, but that claimant had failed to return to that job.

Claimant requested a hearing, contending that the appellate reviewer had erred in not awarding a value for work disability. Specifically, claimant asserted that, contrary

---

[2] French's December 29, 2005, report stated:

"Functionally, he has demonstrated a 50-pound lift. I have reviewed his job analysis as a choker setter which does require intermittent to occasional lifting of 100 pounds with carrying up to a half mile 'or more' of apparently similar weights. He has not demonstrated that. He did not comply with treatment regimen. I believe he would have demonstrated job-at-injury at time he was medically stationary September 8, had he complied with treatment regimen. He has limitations this time due to noncompliance, rather than a permanent residual from his work injury. I do feel he remains medically stationary since last seen September 8, 2005."

[3] ORS 656.268 describes the procedures for reconsideration of a notice of closure.

to the director's determination, French had not released him for regular work.

Citing ORS 656.726(4)(f)(D)(i) and (ii) (2003), the administrative law judge (ALJ) affirmed the director's order on reconsideration, finding that claimant had actually returned to his regular work for a brief period of time pursuant to McCulley's release. The ALJ further explained that subsequent work limitations imposed by French were due to claimant's noncompliance with treatment rather than a permanent residual from his work injury.

Claimant appealed to the board. In response, SAIF contended that claimant had been released for regular work that had been made available to him and therefore was not entitled to an award for work disability. SAIF further asserted that any inability to return to work had been caused by claimant's failure to comply with French's treatment recommendation; accordingly, his inability to return to work was not due to the accepted conditions, and his failure to comply with treatment "amounted to a constructive refusal to return to his regular work." Under those circumstances, SAIF contended, claimant's disability award should be limited to impairment only.

The board reversed the ALJ, rejecting her conclusion that claimant had been released for regular work. The board explained that, in light of subsequent work limitations imposed by McCulley and French, claimant's brief release for regular work by McCulley did not disqualify him from receiving benefits for work disability. In determining that claimant was entitled to a value for work disability, the board found that claimant's disability resulted from his compensable injury.

The board further rejected the ALJ's rationale that claimant's failure to comply with French's prescription of physical therapy disqualified him from receiving work disability. Citing ORS 656.325, the board explained that, although the failure to participate in a program of physical rehabilitation *can* result in a suspension of temporary benefits or a reduction in permanent benefits, that can occur only by means of a separate process. According to the board, the

employer or insurer must first request a reduction in benefits, complying with the procedural requirements of ORS 656.325(4)[4] and OAR 436-060-0105(14).[5] The board concluded that, independent of such a request for reduction, neither the board nor the director has authority, on review of a claim closure under ORS 656.268, to reduce benefits below the amount required by the standards on the ground of noncompliance. The board explained that the only issue before it on review of an order on reconsideration of a notice of claim closure pursuant to ORS 656.268 is whether the disability resulted from the compensable injury. Having found that

---

[4] ORS 656.325(4) was enacted in 1977, by Oregon Laws 1977, chapter 868, section 4. It currently provides, in part:

"When the employer of an injured worker, or the employer's insurer determines that the injured worker has failed to follow medical advice from the attending physician or nurse practitioner authorized to provide compensable medical services under ORS 656.245 or has failed to participate in or complete physical restoration or vocational rehabilitation programs prescribed for the worker pursuant to this chapter, the employer or insurer may petition the director for reduction of any benefits awarded the worker. Notwithstanding any other provision of this chapter, if the director finds that the worker has failed to accept treatment as provided in this subsection, the director may reduce any benefits awarded the worker by such amount as the director considers appropriate."

[5] OAR 436-060-0105 provides, in part:

"(14) The director may reduce any benefits awarded the worker under ORS 656.268 when the worker has unreasonably failed to follow medical advice, or failed to participate in a physical rehabilitation or vocational assistance program prescribed for the worker under ORS chapter 656 and OAR chapter 436. Such benefits must be reduced by the amount of the increased disability reasonably attributable to the worker's failure to cooperate. When an insurer submits a request to reduce benefits under this section, the insurer must:

"(a) Specify the basis for the request;

"(b) Include all supporting documentation;

"(c) Send a copy of the request, including the supporting documentation, to the worker and the worker's representative, if any, by certified mail; and

"(d) Include the following notice in prominent or bold face type:

" 'Notice to worker: If you think this request to reduce your compensation is wrong, you should immediately write to the Workers' Compensation Division, 350 Winter Street NE, PO Box 14480, Salem, Oregon 97309-0405. Your letter must be mailed within 10 days of the mailing date of this request. If the division grants this request, you may lose all or part of your benefits.'

"(15) The division shall promptly make a decision on a request to reduce benefits and notify the parties of the decision. The insurer's failure to comply with one or more of the requirements addressed in this rule may be grounds for denial of the request to reduce benefits."

claimant's disability was a result of his compensable injury, the board determined that claimant was entitled to work disability. Accordingly, the board ordered that claimant's benefits be adjusted to include a value of 31 percent for work disability.

In a motion for reconsideration of the board's order, SAIF conceded that ORS 656.325(4) was not directly applicable. It asserted, however, that that statute expresses the legislative policy that a worker must make reasonable efforts to reduce disability, and that a worker's benefits may be reduced if the worker fails to do so. SAIF contended that a worker's unreasonable noncompliance with treatment recommendations breaks the chain of causation between the injury and the claimant's disability, and that claimant therefore was not entitled to an award for "work disability." SAIF further argued that, under *Nelson v. EBI Companies*, 296 Or 246, 252, 674 P2d 596 (1984), the board has general authority —apart from ORS 656.325—to reduce an award of permanent partial disability below the amount required by the standards when a worker unreasonably refuses medical treatment.

In its order on reconsideration, the board further addressed ORS 656.325(4) and OAR 436-060-0105, holding that they are inapplicable to the present case. As the board interpreted ORS 656.325(4), in the absence of a request to the director, the board was not authorized to reduce a claimant's benefits at the time of claim closure because of a failure to participate in physical rehabilitation. The board explained that the director's administrative rule, OAR 436-060-0105, addresses when a permanent partial disability award may be reduced because of an injured worker's failure to follow medical advice or participate in physical rehabilitation, and that rule requires that the request for such a reduction be initiated after claim closure by the filing of a petition with the director pursuant to OAR 436-060-0105(14).

Finally, the board rejected SAIF's contention that it has general authority to reduce an award of permanent partial disability below the amount required by the standards when a worker unreasonably refuses medical treatment. Distinguishing *Nelson*, the board explained that, when the disability results from the compensable injury—as opposed to a

preexisting condition—the employer's only remedy for a claimant's failure to comply with treatment recommendations is to request a reduction in benefits pursuant to ORS 656.325(4) and OAR 436-060-0105(14). Having concluded that claimant's disability was caused by his compensable injury and that SAIF had not filed a request with the director seeking a reduction in claimant's benefits, the board adhered to its determination that claimant was entitled to an award of permanent partial disability that included a value for work disability.

SAIF now petitions for judicial review, contending that the board erred in failing to affirm the director's order on reconsideration upholding the reduced award due to claimant's failure to comply with French's physical therapy regimen. SAIF now contends—contrary to the position that it took before the board—that ORS 656.325(4) *is* applicable and that it expressly provides the director with authority to reduce permanent partial disability benefits on review of a notice of closure, even in the absence of a request from the insurer or employer. Further, SAIF contends, to the extent that ORS 656.325(4) and the director's administrative rule, OAR 436-060-0105(14), permit the filing of a request by the employer or insurer for a reduction in benefits, those provisions are not inconsistent with the director's general authority to reduce disability benefits. Finally, SAIF contends, apart from any statutory provision, the director and board have general authority to reduce compensation for disability caused by a claimant's failure to mitigate his own disability.

At the outset, we decline to consider SAIF's argument that the director has general authority under ORS 656.325(4) and OAR 436-060-0105(14), on review of a notice of closure, to reduce an award because of a claimant's failure to comply with a physician's treatment recommendations. In its argument to the board requesting reconsideration of the board's order, SAIF conceded that ORS 656.325(4) was inapplicable. The board reached that same conclusion. SAIF cannot be heard now to contend the opposite.[6]

---

[6] We note that the board has long interpreted ORS 656.325(4) to apply only to existing awards of permanent disability, and we and the Supreme Court have approved of that interpretation. *Nelson v. EBI Companies*, 64 Or App 16, 23, 666 P2d 1360 (1983), *aff'd*, 296 Or 246, 252, 674 P2d 596 (1984); *Lynne Fisher*, 52 Van Natta 1392 (2001).

■      SAIF contends that the director and the board have authority, independent of ORS 656.325(4), to reduce a claimant's benefits below the amount calculated under the standards when the claimant unreasonably fails to comply with recommended treatment. SAIF relies on *Nelson*, in which the Supreme Court upheld a reduction in the rating of permanent disability because of the claimant's failure to comply with recommended treatment.

   *Nelson* is distinguishable from this case, however. In that case, the question was whether the board, in making an initial determination of the extent of the claimant's disability for a low back injury, could consider the claimant's failure to mitigate her disability by not following her doctor's advice to lose weight. The evidence showed that the claimant's disability was partially attributable to her excessive weight, which was a preexisting condition. 296 Or at 252. This court approved of the board's statement that, although ORS 656.325(4) was not directly applicable, because the claimant had not received an award of permanent disability, the statute is

> "an application to specific circumstances of the general principles, applicable to the circumstances of this case, that an injured party has a duty to mitigate damages and that the worker's compensation system is generally not liable for pre-existing, nonindustrial conditions."

64 Or App at 23. We applied those general principles to justify the reduced award. Of significance to this court in *Nelson* were the facts that the condition—excessive weight—(1) was causing the disability and (2) was preexisting and nonindustrial. *Id.* The Supreme Court affirmed. 296 Or at 252.

   In this case, in contrast, the board expressly found that, "despite his noncompliance with the treatment recommendations, the record establishes that claimant's inability to return to regular work remained the result of his compensable injury." Furthermore, the board found that claimant's condition was not preexisting. Substantial evidence supports those findings. For those reasons, we agree with the board

that *Nelson* is distinguishable and does not guide the outcome in this case. Accordingly, we conclude that the board did not err in requiring an award for work disability.

Affirmed.