Argued and submitted April 3, 2000, affirmed January 17, 2001

In the Matter of the Compensation of
Sergio Madrigal, Claimant.

Sergio MADRIGAL,
*Petitioner,*

*v.*

J. FRANK SCHMIDT & SON
and Liberty Northwest Insurance Corp.,
*Respondents.*

(98-04937; CA A106313)

17 P3d 555

Max Rae argued the cause and filed the brief for petitioner.

David O. Wilson argued the cause and filed the brief for respondents.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Claimant seeks review of an order of the Workers' Compensation Board (Board) upholding employer's calculation of benefits for temporary partial disability compensation. We affirm.

The relevant facts are not in dispute. In early January 1996, claimant compensably injured his ankle. His physician treated him and, on January 24, 1996, released him to modified work. Employer immediately offered claimant a light-duty job, beginning January 29, 1996, at the same wage as claimant's wage at the time of injury. Claimant did not report for the job and, in fact, did not communicate with employer until February 7, 1996. Meanwhile, employer paid claimant temporary partial disability benefits through January 28, 1996, the day before the modified work would have commenced. On May 18, 1996, claimant's physician released him to regular employment.

On August 12, 1996, claimant's claim was closed by a determination order awarding him temporary partial disability through January 29, 1996. Claimant requested reconsideration, contending that he was entitled to partial disability payments at the full rate for temporary total disability through May 17, 1996, the day before he was released to regular employment. The Board ultimately reversed the determination order, holding that, because claimant was not released to regular employment until May 18, 1996, he was, at least "theoretical[ly]," entitled to receive temporary partial disability benefits until that time. The question remains, the Board held, precisely how much claimant is entitled to receive. According to the Board, "if claimant was to receive his regular wage or more for performing modified work, [temporary partial disability benefits] would be zero."

Neither party sought judicial review of the Board's order. Employer then calculated claimant's temporary partial disability benefits for the period from January 30, 1996, through May 17, 1996, to be zero. Employer reasoned that, because claimant had turned down the offer of modified work at the same wage as his wage at the time of injury, he suffered no "loss" of wages due to his compensable condition.

Claimant requested a hearing, arguing that he is entitled to temporary partial disability benefits at the full temporary total disability rate regardless of his failure to accept the offer of modified work.

The administrative law judge (ALJ) concluded that employer correctly calculated petitioner's rate of disability benefits. The ALJ relied on OAR 436-060-0030(5), which provides that payments at the temporary total disability rate cease when the worker fails to begin modified work approved by the attending physician. The ALJ further concluded that petitioner's reading of the applicable law

> "would necessarily require the factfinder to conclude that the * * * Legislature intended to compel [insurers] to pay time loss to workers who: (1) refused valid offers of return to work; and (2) were then terminated for reasons unrelated to their work injury. I do not believe that such a construction of Chapter 656 was intended by the Legislature. ORS 656.212(1) (requiring a loss of wages to be the result of a compensable injury), 656.268(3)(c), and 656.325(5)(a) & (b) (mandating that a worker shall no longer receive temporary total disability if he, like this claimant, refuses a valid offer of modified work)."

The Board affirmed, adopting the opinion of the ALJ.

On review, claimant argues that the Board erred in upholding employer's calculation of his benefits at zero. He argues that OAR 436-060-0030(5) is invalid because it is inconsistent with ORS 656.212, which he reads as requiring the payment of temporary partial disability benefits at the full temporary total disability rate regardless of a refusal to begin modified work. Employer responds that the statute requires payment of temporary disability benefits only for wages lost due to the compensable injury, not due to the worker refusing to accept modified work. We agree with employer.

We review the Board's construction of the applicable statute as a matter of law, looking first to the text of the statute in context and then, if necessary, to legislative history and other aids to construction. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

Temporary disability benefits generally are intended to provide replacement for wages lost due to a compensable injury. *Cutright v. Weyerhaeuser Co.*, 299 Or 290, 296, 702 P2d 403 (1985). As this court held in *Roseburg Forest Products v. Wilson*, 110 Or App 72, 75, 821 P2d 426 (1991), "[i]n the absence of a legislative direction to the contrary, [temporary disability benefits] are not available if the loss results from other than the compensable injury." The question in this case is whether there is any "legislative direction to the contrary."

ORS 656.210 provides for the payment of time loss benefits when the worker suffers a temporary total disability. Under that statute, the worker is entitled to 66-2/3 percent of wages at the time of the injury, not to exceed 100 percent of the average weekly wage. When the disability becomes only partial in character, ORS 656.212 provides that:

"(1) No disability payment is recoverable for temporary disability suffered during the first three calendar days after the worker leaves work or loses wages as a result of the compensable injury. If the worker leaves work or loses wages on the day of the injury due to the injury, that day shall be considered the first day of the three-day period.

"(2) The payment of temporary total disability pursuant to ORS 656.210 shall cease and the worker shall receive that proportion of the payments provided for temporary total disability which the loss of wages bears to the wage used to calculate temporary total disability pursuant to ORS 656.210."

Thus, under subsection (2), when a temporary disability becomes partial in character, the worker's benefit is calculated as a percentage of the temporary total disability benefits. In turn, that percentage is the "loss of wages" divided by the wage used to calculate the temporary total disability.

At issue in this case is the meaning of the "loss of wages" component of the fraction. Claimant contends that it means whatever wage he is not making following the compensable injury, regardless of the reason for that loss. In claimant's view, because he did not work after his injury, his "loss of wages" is the full amount of the wages earned at the

time of injury and used to calculate his temporary total disability; the fraction thus equals "1," and he is entitled to full temporary total disability benefits. Employer argues that the "loss of wages" refers to wages lost *as a result of* the compensable injury. In this case—because it is undisputed that the wages were lost solely because claimant refused to accept modified work—the "loss of wages" component of the fraction is zero, and thus he is entitled to zero times the temporary total disability benefits, or zero.

We begin by noting that, under the ordinary meaning of the term "loss," claimant's reading of the statute is unlikely. "Loss" generally refers to "the act or fact of losing." *Webster's Third New Int'l Dictionary*, 1338 (unabridged ed 1993). To "lose" generally means "to suffer deprivation of : part with esp. in an unforeseen or accidental manner." *Id.*; *see also Black's Law Dictionary*, 945 (6th ed 1990) (defining "lose" as "to suffer the loss of; to be deprived of; part with, especially in an accidental or unforeseen manner; as to lose an eye"). That would suggest that a "loss of wages" within the meaning of ORS 656.212(2) refers to a deprivation of wages as a result of an accidental or unforeseen compensable injury.

The manner in which the term is used elsewhere in the same section confirms that "loss of wages" was intended to mean what its ordinary wording suggests. Subsection (1) of ORS 656.212 spells out the timing of temporary partial disability benefits. The first of two sentences provides that, when a temporary disability becomes partial in character, the worker may not recover any benefits during the first three days after the worker "leaves work or *loses wages as a result of the compensable injury*." (Emphasis added.) The loss of wages is explicitly causally connected with the compensable injury. ORS 656.212(1). The second sentence then provides that, if the worker "leaves work or loses wages on the day of the injury due to the injury," that day commences the three-day period. *Id.* That sentence, too, explicitly connects the loss of wages with the compensable injury.

Subsection (2) of ORS 656.212 then describes the amount of the temporary partial disability benefit. It declares that, after that three-day period, the amount of the

benefit is determined by the aforementioned formula, a component of which is "the loss of wages." The use of the definite article *"the* loss of wages"—indicates that the phrase refers to the same loss of wages that is mentioned in the preceding two sentences. *See, e.g., Anderson v. Jensen Racing, Inc.*, 324 Or 570, 578-79, 931 P2d 763 (1997) (use of the definite article is an indicator of statute's intended meaning). Thus, it refers to the loss of wages due to the compensable injury.

To read the statute otherwise would require the same wording to mean two different things in the same statutory section. Nothing in the text of the statute suggests that the legislature intended that unlikely construction. *See PGE*, 317 Or at 611 (citing presumption that the "use of the same term throughout a statute indicates that the term has the same meaning throughout the statute").

■ Moreover, claimant's construction of ORS 656.212(2) cannot be reconciled with the general obligation of the worker to mitigate his or her losses. Under ORS 656.325(2), for example, a worker's benefits may be suspended if he or she commits acts that "imperil or retard recovery" or if the worker "refuses to submit to such medical or surgical treatment as is reasonably essential to promote recovery." Closer to the point, under ORS 656.325(5), when a worker receiving temporary total disability benefits refuses modified employment for which he or she is qualified, the worker is no longer entitled to those benefits. ORS 656.268(3)(c) similarly provides that temporary total disability benefits must cease if, after being released to modified work, a worker refuses to accept an offer of such work. As the Supreme Court observed in *Nelson v. EBI Companies*, 296 Or 246, 252, 674 P2d 596 (1984), such statutes indicate that a "claimant who has suffered personal injury has a duty to minimize his or her damages." Claimant's suggestion that, under ORS 656.212(2), a partially disabled worker may receive temporary total disability benefits merely by refusing to take a valid offer of modified work clearly is at odds with that duty.

We conclude that the Board correctly upheld employer's calculation of claimant's temporary partial disability benefits to be zero.

Claimant advances other arguments for reversal of the Board, but they do not require discussion.

Affirmed.