Argued and submitted October 4, reversed and remanded for reconsideration
November 28, 2007

In the Matter of the Compensation of
Fidel Vivanco, Claimant.

SAIF CORPORATION
and Tommy & Stacy Norton,
*Petitioners,*

*v.*

Fidel VIVANCO,
*Respondent.*

Workers' Compensation Board
0505809; A133147

173 P3d 160

Jerome P. Larkin, Special Assistant Attorney General, argued the cause for petitioners. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Edward J. Harri argued the cause for respondent. With him on the brief was Philip H. Garrow.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Riggs, Senior Judge.

LANDAU, P. J.

**LANDAU, P. J.**

SAIF Corporation seeks review of an order of the Workers' Compensation Board holding that it was required to pay claimant benefits for temporary total, rather than temporary partial, disability for his compensable injury from the time claimant was terminated from his employment with employer to the time his physician released him for regular work. We agree with SAIF that claimant was entitled only to temporary partial disability benefits, and we therefore reverse and remand for reconsideration.

The relevant facts are not in dispute. On January 9, 2005, claimant suffered a compensable injury involving his upper left side, including his head, back, and left shoulder. On February 8, 2005, claimant's attending physician, Dr. Mullins, took claimant off work for one week. On February 9, 2005, SAIF accepted a claim for left acromioclavicular joint strain, thoracic strain, and left frontal area hematoma. After being off work for one week, claimant returned to modified work for employer, performing modified job duties at his regular wage.

ORS 656.210 provides for the payment of benefits for temporary total disability during a period of total disability. When the disability is or becomes partial only and is temporary in character, ORS 656.212(2) provides:

> "The payment of temporary total disability pursuant to ORS 656.210 shall cease and the worker shall receive that proportion of the payments provided for temporary total disability which the loss of wages bears to the wage used to calculate temporary total disability pursuant to ORS 656.210."

Thus, as a general rule, when a worker's temporary disability becomes partial in character and the worker returns to wage-earning employment, the worker's entitlement to temporary total disability benefits under ORS 656.210 ceases, and benefits for partial disability, if any, are calculated as a percentage of the temporary total disability benefits, pursuant to ORS 656.212(2).

For the time that claimant was off work, SAIF paid claimant benefits for temporary total disability. Beginning

with claimant's return to modified work, SAIF calculated claimant's benefits pursuant to ORS 656.212. Because claimant was working full time at his preinjury wage, his temporary partial disability benefits were determined to be zero.

On April 28, 2005, claimant's new attending physician, Dr. Karmy, placed claimant on modified work, and claimant continued in his same modified duties, at his full wage. Employer did not notify Karmy of claimant's specific job duties, nor did Karmy agree that claimant was capable of performing specified modified job duties. Claimant continued to undergo treatment and diagnostic testing, and, on June 15, 2005, Karmy recommended surgery and restricted claimant to light duty. Claimant continued to be employed full time at his preinjury wage.

On July 3, 2005, employer terminated claimant from his employment due to poor performance, for reasons unrelated to his injury. SAIF paid no total disability benefits to claimant for the period after he was terminated until September 22, 2005, when claimant had surgery on his left shoulder. SAIF then paid temporary total disability benefits from September 22 through October 5, 2005. Claimant requested a hearing, seeking temporary total disability benefits from July 4, 2005, the date he was terminated, through September 21, 2005.

Because the parties' dispute involves the interplay of two statutes, ORS 656.268(4) and ORS 656.325(5)(a), and the effect of an administrative rule, OAR 436-060-0030, we set out those provisions at the outset of our discussion. ORS 656.268(4) provides for the termination of temporary total disability benefits under several circumstances:

"Temporary total disability benefits shall continue until whichever of the following events first occurs:

"(a) The worker returns to regular or modified employment;

"(b) The attending physician advises the worker and documents in writing that the worker is released to return to regular employment;

"(c) The attending physician advises the worker and documents in writing that the worker is released to return

to modified employment, such employment is offered in writing to the worker and the worker fails to begin such employment."

ORS 656.325(5) permits an insurer to cease paying benefits for temporary total disability and begin paying benefits for temporary partial disability when the worker has been released for modified work but does not return to work for one of the reasons described in the statute. As pertinent here, ORS 656.325(5) provides:

"(a)  * * * [A]n insurer or self-insured employer shall cease making payments pursuant to ORS 656.210 and shall commence making payment of such amounts as are due pursuant to ORS 656.212 *when an injured worker refuses wage earning employment* prior to claim determination and the worker's attending physician or nurse practitioner authorized to provide compensable medical services under ORS 656.245, after being notified by the employer of the specific duties to be performed by the injured worker, agrees that the injured worker is capable of performing the employment offered.

"(b)  *If the worker has been terminated for violation of work rules or other disciplinary reasons*, the insurer or self-insured employer shall cease making payments pursuant to ORS 656.210 and shall commence making payment of such amounts as are due pursuant to ORS 656.212 when the attending physician * * * authorized to provide compensable medical services under ORS 656.245 approves employment in a modified job *that would have been offered to the worker if the worker had remained employed*, provided that the employer has a written policy of offering modified work to injured workers."

(Emphasis added.)

The Workers' Compensation Division of the Department of Consumer and Business Services has adopted an administrative rule implementing the statutory provisions relating to payment and cessation of temporary disability benefits, including ORS 656.268(4) and ORS 656.325(5). As relevant to employees who have returned to modified work, OAR 436-060-0030 provides:

"(3)  An insurer shall cease paying temporary total disability compensation and start paying temporary partial

disability compensation under section (1) from the date an injured worker begins wage earning employment, prior to claim closure * * *[.]

"* * * * *

"(8) Temporary partial disability must be paid at the full temporary total disability rate as of the date a modified job no longer exists or the job offer is withdrawn by the employer. This includes, but is not limited to, termination of temporary employment, layoff or plant closure. A worker who has been released to and is doing modified work at the same wage as at the time of injury from the onset of the claim shall be included in this section. *For the purpose of this rule, when a worker who has been doing modified work quits the job or the employer terminates the worker for violation of work rules or other disciplinary reasons it is not a withdrawal of a job offer by the employer, but shall be considered the same as the worker refusing wage earning employment under ORS 656.325(5)(a).*"

(Emphasis added.)

Claimant contended before the board that, because he was terminated from modified work during a period of temporary partial disability, OAR 436-060-0030(8) required that his termination be treated as a refusal to work under ORS 656.325(5)(a) and that, after his termination, employer was required to resume payment of temporary total disability benefits until his attending physician had approved a modified job.

SAIF argued that, under ORS 656.268(4)(a), claimant's entitlement to temporary total disability ended when he voluntarily returned to modified work after one week of time loss. According to SAIF, claimant's benefits after his termination were to be paid at the same rate as at the time of his termination. Because, at the time of his termination, claimant had been working full time at his preinjury wage, SAIF argued, his entitlement to benefits for temporary partial disability after his termination was zero. SAIF asserted, further, that ORS 656.325(5) had no application to the circumstances of this claim because claimant had returned to work before his termination.

The board rejected SAIF's contention that the insurer's obligation is governed by ORS 656.268(4). The board held that, despite the fact that claimant had voluntarily returned to full-time modified work at his preinjury wage, the claim became subject to the provisions of ORS 656.325(5) when he was terminated, and SAIF was required to resume payment of temporary total disability benefits until Karmy had approved of the specific duties to be performed in claimant's modified work. In support of its conclusion, the board quoted from the Supreme Court's opinion in *Morales v. SAIF*, 339 Or 574, 581, 124 P3d 1233 (2005), that "ORS 656.325(5) unambiguously conditions both the obligation to stop paying temporary total disability and the obligation to begin paying temporary partial disability on the attending physician's approval of employment in a modified job." Citing OAR 436-060-0030(8), the board further reasoned that claimant's termination from his employment was the equivalent of a refusal of wage-earning employment under ORS 656.325(5)(a). Finding that claimant's attending physician had not agreed that claimant could perform the specific duties of employer's modified job, the board concluded that SAIF had failed to satisfy the conditions necessary for termination of temporary total disability benefits under ORS 656.325(5)(a).

On review, SAIF contends once again that ORS 656.325(5)(a) has no application to this case. SAIF asserts that the statute applies only in the context of a claim involving a worker who has refused wage-earning employment and does not govern in the context of a worker who has returned to modified work and is terminated thereafter. SAIF contends that, under ORS 656.268(4) and ORS 656.212, its obligation to pay temporary total benefits ceased when claimant returned to modified work. At that point, SAIF contends, claimant was entitled to temporary partial disability benefits, but, because claimant's wage at his modified job was the same as his preinjury wage, claimant's temporary partial disability rate was zero.

SAIF also disputes the board's conclusion that OAR 436-060-0030(8) brings the claim within the scope of ORS 656.325(5)(a), including its prerequisites for termination of benefits. Rather, SAIF contends, the administrative rule

simply requires that a termination during modified work be treated as a refusal, rather than as a *withdrawal* of the modified job, so as not to trigger the insurer's duty stated in the first sentence of OAR 436-060-0030(8) to pay temporary partial disability "at the full temporary total disability rate." SAIF contends, further, that the rule's treatment of a termination from employment as a refusal to work for purposes of entitlement to benefits for temporary total disability should not also be understood to incorporate the prerequisites of ORS 656.325(5)(a) for the termination of benefits for temporary total disability. To the extent that the administrative rule is understood to require that, SAIF contends, it is inconsistent with the text of ORS 656.325(5)(a) and an impermissible extension of the statute. Finally, SAIF contends that the board mistakenly concluded that *Morales* dictates the outcome in this case.

■■ We agree with each of SAIF's contentions. ORS 656.268(4) unambiguously provides that benefits for temporary total disability continue until the worker returns to regular or modified employment. Under ORS 656.212, when a claimant's disability is no longer total, the claimant is entitled to "that proportion of the payments provided for temporary total disability which the loss of wages bears to the wage used to calculate temporary total disability." In this case, it is undisputed that, after being off work for one week, claimant returned to modified work at his regular, preinjury wage. Thus, under ORS 656.268(4), his entitlement to benefits for temporary total disability ceased, and, under ORS 656.212, he was entitled instead to benefits for temporary partial disability. Because claimant received his regular wage for his modified work, he did not experience a loss of wages due to his compensable injury, and his rate of temporary partial disability was zero. There is no dispute that SAIF properly calculated claimant's temporary partial disability benefits under ORS 656.212, based on the work that claimant could perform after he returned to modified work. We agree with SAIF that under ORS 656.268(4), it was required to begin paying claimant temporary partial disability benefits when he returned to modified work.

■■ We turn to the consequence, for the purpose of benefits, of claimant's termination from his employment during a

period of temporary partial disability. Temporary disability benefits are to replace wages lost due to a compensable injury, not due to the worker refusing to accept modified work. *Madrigal v. J. Frank Schmidt & Son*, 172 Or App 1, 7, 17 P3d 555 (2001); *Roseburg Forest Products v. Wilson*, 110 Or App 72, 75, 821 P2d 426 (1991). In this case, claimant's termination from his employment for poor performance, even if treated as a refusal to work, does not give rise to benefits greater than those to which claimant was entitled while he was working, unless his disability resulting from the injury has increased. In the absence of evidence that claimant's disability after his termination increased as a result of his injury, SAIF had an obligation to continue paying claimant only those temporary partial disability benefits to which he was entitled at the time of his termination. *See Stone v. Whittier Wood Products*, 116 Or App 427, 430, 841 P2d 700 (1992) (So long as a termination is not for reasons related to the injury and the worker is earning wages equal to or greater than those received at the time of the injury, there is no entitlement to temporary benefits after the termination date.).

The board reasoned that, under ORS 656.325(5)(a), claimant's termination required the resumption of temporary total disability benefits, unless and until claimant's attending physician had authorized his modified job. However, we agree with SAIF that the text of ORS 656.325(5) shows that the statute does not apply in the context of this case. Both ORS 656.325(5)(a) and (b) on their face apply when a worker *does not return to a modified job* that has been offered and approved by the worker's physician, either because the worker refuses the employment or because the worker has been terminated from employment for violation of the employer's rules. In those contexts, the release for modified work will constitute a sufficient basis for cessation of temporary total disability benefits, if the physician has approved the job that would have been available to the worker. When, however, the worker has actually returned to modified work at the time of the termination, those provisions on their face have no application.

The department's administrative rule, OAR 436-060-0030(8), requires that a termination from modified

employment during a period of temporary partial disability be treated as a refusal of employment under ORS 656.325(5)(a), thereby authorizing the insurer to begin payment of temporary partial disability. However, to read the rule as the board does—to also require the physician's approval of the modified job from which the worker has been terminated before the insurer may begin paying temporary partial disability—would bring the rule into conflict with ORS 656.325(5)(a), as well as with ORS 656.268(4). *Cook v. Workers' Compensation Department*, 306 Or 134, 138, 758 P2d 854 (1988) ("An administrative agency may not, by its rules, amend, alter, enlarge or limit the terms of a statute.").

We also reject the board's reasoning that its conclusion is required by the Supreme Court's opinion in *Morales*. That case involved a worker who could not return to modified work with the employer-at-injury because he had been terminated from that employment for reasons unrelated to the injury. As the court noted, the "hypothetical modified job" referred to in ORS 656.325(5)(b) "is a job that would have been offered by the employer-at-injury had the claimant remained employed by the employer-at-injury." *Morales*, 339 Or at 581. The portion of the opinion quoted by the board, that "ORS 656.325(5) unambiguously conditions both the obligation to stop paying temporary total disability and the obligation to begin paying temporary partial disability on the attending physician's approval of employment in a modified job," 339 Or at 581, expressed a rejection of the claimant's particular argument in *Morales* that ORS 656.325(5)(b) applies only if the injured worker is receiving temporary total disability benefits at the time of termination. There is nothing in the court's opinion that requires or suggests that ORS 656.325(5)(a) or (b) applies to a worker who refuses work or is terminated after having returned to modified work for the employer-at-injury.

For the reasons explained, we hold that the board erred in concluding that SAIF was required to pay claimant temporary total disability after his termination from employment because it had not complied with the notice and approval provisions of ORS 656.325(5)(a). SAIF's authority to terminate temporary total disability and to begin paying temporary partial disability is derived from ORS

656.268(4)(a), which requires that temporary total disability benefits be terminated when the worker returns to modified work. Because the wages that claimant earned at modified employment were equal to his "at-injury" wages, claimant's temporary partial disability rate was zero. Accordingly, no further benefits were due. *See Safeway Stores v. Owsley*, 91 Or App 475, 480, 756 P2d 48 (1988) (Regardless of whether the claimant was terminated for reasons related to her work injury, because her wage at the time of termination was greater than her wage at injury, she would be entitled to temporary disability benefits at a rate of zero.).

Reversed and remanded for reconsideration.